22 A.3d 129

KINDERKAMACK ROAD ASSOCIATES, LLC, PLAINTIFF–APPEL-
LANT, v. MAYOR AND COUNCIL OF THE BOROUGH OF ORA-
DELL, ORADELL ZONING BOARD OF ADJUSTMENT, AND
CITIZENS ACTION TO PRESERVE ORADELL, DEFEN-
DANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 1, 2011—Decided July 12, 2011.

Before Judges GRAVES, MESSANO and WAUGH.

*Stephen P. Sinisi* argued the cause for appellant (*Law Offices of Stephen P. Sinisi, LLC,* attorneys; *Mr. Sinisi* and *Vanessa D. Sinisi,* on the brief).

*Michael B. Kates* argued the cause for respondent Mayor and Council of the Borough of Oradell (*Kates Nussman Rapone Ellis & Farhi, LLP,* attorneys; *Mr. Kates,* on the brief).

*Ira E. Weiner* argued the cause for respondent Oradell Zoning Board of Adjustment (*Beattie Padovano, LLC,* attorneys; *John J. Lamb* and *Mr. Weiner,* of counsel; *Mr. Weiner,* on the brief).

*Richard J. Abrahamsen* argued the cause for respondent Citizens Action to Preserve Oradell.

The opinion of the court was delivered by

GRAVES, J.A.D.

In this municipal land use case, we consider whether a commercial landowner may obtain a variance to use an adjoining residential lot to satisfy setback requirements. Plaintiff Kinderkamack Road Associates, LLC, appeals from a Law Division order affirming a resolution by defendant Mayor and Council of the Borough of Oradell (the Governing Body) rejecting plaintiff's application for a use variance. The Governing Body's resolution reversed a prior resolution by the Oradell Zoning Board of Adjustment (the Board), which granted plaintiff's application. For the reasons that follow, we affirm the Law Division's order.

Because of the legislative preference for municipal land use planning by ordinance rather than variance, use variances may be granted only in exceptional circumstances. *E.g., Nuckel v. Borough of Little Ferry Planning Bd.,* 208 *N.J.* 95, 101–02, 26 *A.*3d 418, 2011 *WL* 2384322 (2011) (acknowledging this preference); *Funeral Home Mgmt., Inc. v. Basralian,* 319 *N.J.Super.* 200, 207, 725 *A.*2d 64 (App.Div.1999) (stating that "only exceptional cases warrant use variances"). Therefore, a municipal board of adjustment may permit "a use or principal structure in a district restricted against such use or principal structure" only where the applicant can demonstrate "special reasons" for the variance. *N.J.S.A.* 40:55D–70(d)(1). This requirement is known as the "positive criteria." *New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adj.,* 160 *N.J.* 1, 6, 733 *A.*2d 442 (1999). In addition, a variance application must meet the "negative criteria," *ibid.,* by "showing that [the] variance can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." *N.J.S.A.* 40:55D–70(d).

 Regarding the positive criteria, the Court has stated that " 'special reasons' takes its definition and meaning from the general purposes of the zoning laws" enumerated at *N.J.S.A.* 40:55D–2. *Burbridge v. Twp. of Mine Hill,* 117 *N.J.* 376, 386, 568 *A.*2d 527 (1990) (citing *Kohl v. Mayor of Fair Lawn,* 50 *N.J.* 268, 279, 234 *A.*2d 385 (1967)). In *Saddle Brook Realty, LLC v. Township of Saddle Brook Zoning Board of Adjustment,* 388 *N.J.Super.* 67, 76, 906 *A.*2d 454 (App.Div.2006), we observed three situations in which "special reasons" may be found:

> (1) where the proposed use inherently serves the public good, such as a school, hospital or public housing facility; (2) where the property owner would suffer "undue hardship" if compelled to use the property in conformity with the permitted uses in the zone; and (3) where the use would serve the general welfare because the proposed site is particularly suitable for the proposed use.
>
> [ (Internal citations and quotation marks omitted).]

Because most commercial uses are not inherently beneficial, *Medici v. BPR Co.,* 107 *N.J.* 1, 18, 526 *A.*2d 109 (1987), they must generally rely on the particular suitability of the site or an undue hardship to the owner. *Stop & Shop Supermarket Co. v. Bd. of Adj. of Springfield,* 162 *N.J.* 418, 431, 744 *A.*2d 1169 (2000).

 All use variance applicants must satisfy the first prong of the negative criteria, which requires proof that "the variance can be granted 'without substantial detriment to the public good.' " *Medici v. BPR Co., supra,* 107 *N.J.* at 22 n. 12, 526 *A.*2d 109. In addition, any proponent of a use that is not inherently beneficial must satisfy "an enhanced quality of proof" that requires "clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." *Id.* at 21, 526 *A.*2d 109. These findings "must reconcile the proposed use variance with the zoning ordinance's omission of the use from those permitted in the zoning district." *Ibid.*

In 1978 and 1988, respectively, Oradell adopted and reaffirmed the Oradell Master Plan (the Master Plan), which set forth the following goals:

1. To encourage the proper relationship between land uses by promoting spatial distribution of uses and establishing areas which have their own integrity and uniformity of purpose;

2. To encourage and provide buffer zones to separate incompatible land uses;

3. To preserve and enhance the primarily residential character of the existing community by restricting incompatible land uses from established residential areas and maintaining compatible residential densities in established neighborhoods;

. . . .

6. To preserve and enhance the Borough's commercial areas by defining their functional role in the Borough and enhancing the quality of life within the commercial center through an appropriate mixture of activities, in order to create a community focal point. . . .

The Master Plan also sought to encourage "[t]he elimination of incompatible land uses to ensure a consistent land use arrangement." A 2005 reexamination report confirmed these goals.

Plaintiff is the owner of four lots in the Borough of Oradell (Oradell): 623 Ridgewood Avenue (Lot 9); 619 Ridgewood Avenue (Lot 10); 281 Kinderkamack Road (Lot 11); and 265 Kinderkamack Road (Lot 13). Lot 9 is located entirely within an R–4 Residential Zone, and Lots 10, 11, and 13 are in a B–1 Business Zone.

In late 2007, plaintiff filed a variance application with the Board seeking "to construct improvements to [Lots 9, 10, 11, and 13] to lease same to a 'Walgreens' pharmacy, with drive-through window facilities." Plaintiff proposed to utilize Lots 10, 11, and 13 for parking and the building itself, while transforming Lot 9 into a landscaped buffer zone with no structures, commercial or otherwise. Over the next year, the Board conducted twelve hearings, and plaintiff presented four expert witnesses: Conrad Roncati, a licensed architect; Robert Costa, a municipal engineer; Gary Dean, a traffic engineer; and Paul Phillips, an urban planner. Plaintiff also called one fact witness: James Ward, a Walgreens supervisor.

Regarding the positive criteria, Phillips testified that Lot 9 was well-suited for the proposed use because plaintiff's plan would (1) make the block consistent with the B–1/R–4 zone boundary on the other side of Ridgewood Avenue; (2) allow a "more efficient site

layout" by expanding the buffer between the B–1 and R–4 zones; and (3) "eliminate a number of non-conforming conditions" already existing on the lots. He also stated that the application would advance three of the stated purposes of the Municipal Land Use Law (MLUL) found at *N.J.S.A.* 40:55D–2.

With regard to the negative criteria, Phillips testified that "the public good is generally the community at large as well as more specifically the immediate surroundings," and he acknowledged that the project's "real potential impact [was] on Lot 8." Nevertheless, he concluded that the proposal would not be detrimental to the general welfare:

> The real potential impact is on Lot 8. Because, indeed, it is bringing the commercial assemblage closer to that residence. And, I think ... that residence is entitled to be afforded maximum protection.
>
> But, again, ... the mitigating factor here is that [Lot 9] is being used solely as a landscaped buffer.
>
> So, I think the issue to consider, in weighing impacts here, is whether that buffer, in any way, has a significant negative impact on that lot when weighed against .. the positive benefits ... of, including Lot 9 within [the commercial development] site.
>
> ....
>
> And, I look at it ... in terms of weighing any impact relative to the benefits. And ... I think the impacts would not rise to the level of substantial and that would clearly [allow], in my opinion, the Board to grant the relief without causing substantial detriment to the public good.

Phillips also testified that plaintiff's application was a "redevelopment opportunity" that was "consistent with the thinking that is espoused in the Master Plan." Although Phillips noted that the proposal would extend "the limits of the commercial development [by] one lot," he argued that it would not "have any significant impact on the zone plan."

In addition, the Board heard expert testimony from Joseph Burgis, its planner, and John M. Packolek, its engineer. It also heard testimony from Stephen Depken, Oradell's Zoning Officer. Regarding the positive criteria, Burgis emphasized that no business activity would occur on Lot 9. Rather, "the sole use" for the lot would be "landscaping [to] serve as a buffer for [plaintiff's]

non-residential use." He offered the following testimony on the negative criteria:

[W]hen we talked about the ... first prong of the negative criteria, no substantial detriment to the public good, although there [were] a lot of questions about the amount of traffic generating potential and pollution from cars and that sort of thing, those issues, unfortunately, don't ... relate at all to the issue of the parking lot and the building because all of that is in the portion of the site that's already zoned for that particular use.

In terms of the second prong of the negative criteria, no substantial ... impairment to the intent and purpose of the zone plan[, the] zone plan talks about enhancing the landscaping amenity to the community.

The Master Plan talks about enhancing buffers, separating incompatible land uses.

So, when you focus on the issue of use, those are the things that you should really focus on rather than some of the other things that have been discussed that relate to vehicles, traffic generating potential and the building itself and the use itself.

Burgis agreed, however, that Lot 9 was only being utilized to allow a larger commercial building on Lots 10, 11, and 13:

ACTING CHAIRMAN LANG: ... So, in essence, we have an entire development of the site, which includes Lot 9, that really doesn't fit into the B–1 zone. So, we're having to use Lot 9 to make it fit.

MR. BURGIS: [Plaintiff] would lose 14 parking spaces and have to reduce the size of the commercial building on this lot by that amount. That's what would happen.

On December 30, 2008, the Board approved plaintiff's application by a vote of five to two. It memorialized its decision and made detailed findings in a thirty-page resolution on February 17, 2009.

The Board found that "[t]he utilization of Lot 9 solely as a landscaped and fenced buffer between the permitted Walgreens pharmacy use and the adjacent residential properties creates greater protection for the adjoining residential property and provides a substantial transition area between the B–1 Zone and R–4 Zone." It further found that "the proposed landscaped and fenced buffer area is a less intrusive use than currently exists." The Board analyzed plaintiff's proposal as follows:

(iv) All non-buffer activity on the site is located on the portion of the Property which is entirely within the B–1 Zone. The proposed commercial use is consistent

with the existing developed property located to the north across from Ridgewood Avenue. The Board agrees with [Phillips] that special reasons exist and that the application satisfies the positive criteria required for [the] granting of a variance pursuant to *N.J.S.A.* 40:55D–70(d)(1). The proposed development and consolidation of Lots 9, 10, 11, and 13 will result in the elimination of a significant number of non-conforming bulk conditions . . . and will eliminate the non-conforming residential use of Lot 10 which is located entirely in the B–1 Business Zone. . . . Additionally, the Board is satisfied, that this configuration furthers the general welfare because it will increase open space and encourage a desirable visual environment by ensuring that no residential dwelling is too close to either the parking areas of the development or the commercial structure on the Property. The Board further finds, as stated by [Burgis], that Lot 9 could be fully landscaped as planned by a residential property owner and be a permitted use. The Board further agrees with Burgis'[s] testimony that this furthers the goals of the Master Plan of enhancing buffers and separating incompatible uses.

(v) The Board also finds Mr. Phillips['s] testimony credible that the proposed development is consistent with the existing Master Plan of the Borough of Oradell in that the Master Plan recommends assembling of properties to promote aesthetically attractive and efficient use of property.

(vi) Lot 9 is particularly suitable for use as a landscaped oversized buffer. The utilization of Lot 9 solely as a landscaped buffer zone, with fencing, does not constitute a substantial detriment to the public good and does not cause a substantial negative impact to the adjacent residential properties. . . .

(vii) The Board is satisfied that the granting of this use variance to ostensibly permit a commercial use on Lot 9 does not constitute a substantial impairment of the zone plan and zoning ordinance and can be reconciled with the Borough's zoning ordinance. When the ordinance was drafted, the Oradell Council drew the zone boundary between Lot 9 and Lot 10, with the expectation that Lot 9 would be residential and Lot 10 would be commercial. It only required a 10–foot buffer between those two use categories. It did not envision that Lot 9 would be used exclusively as part of an overall development of the area, and the Board believes that were the Council to review the applicable zoning, it would countenance this type of development. In fact, if Lot 9 was not a part of the commercial property, it could be developed as a landscaped open space as of right. For that reason, the variance is more technical than substantive. The Board recognizes that while this type of reconciliation is not explicitly mentioned in [*Medici v. BPR Co., supra,* 107 *N.J.* at 21 n. 11, 526 *A.*2d 109], it is mindful that the New Jersey Supreme Court's reference to the new uses and changing conditions were merely two examples of how a board of adjustment could reconcile a use's omission from the ordinance. The Board finds that the ordinance's omission of this type of landscaped use is inadvertent. Therefore, the Board believes that the granting of a use variance, for use of the entire residential lot as a landscaped buffer, in effect creating a much larger buffer than is otherwise required, for a commercial development in the R–4 Zone can be reconciled with Oradell Zoning Code.

The Board imposed "a deed restriction limiting the use of [Lot 9] to landscaped/fenced/buffered area" to ensure that plaintiff

would never utilize it for "any active commercial or other active use." In addition, it granted a number of bulk, signage, and parking variances on Lots 10, 11, and 13, finding none of them to be "substantially detrimental" to Oradell and the surrounding neighborhoods. In sum, the Board found that plaintiff's proposal (1) was "a better zoning alternative and [would] constitute a benefit to the community"; (2) would not "be substantially detrimental to the public good"; and (3) was consistent with "the purpose and intent of the zoning ordinance, master plan and the Municipal Land Use Law."

Less than a week later, on February 23, 2009, defendant Citizens Action to Preserve Oradell (CAPO) appealed the Board's decision to the Governing Body as an "interested party" pursuant to *N.J.S.A.* 40:55D–17(a).[1] Counsel for CAPO, plaintiff, and the Board appeared for oral arguments on June 10, 2009, and the Governing Body performed a full de novo review. *See Evesham Twp. Zoning Bd. of Adj. v. Evesham Twp. Council,* 86 *N.J.* 295, 300, 430 *A.*2d 922 (1981) (stating that a governing body must "make a *de novo* review of the record established before the board and reach its own decision in the matter subject only to the requirement that its findings and conclusions are supported by the record.").

On June 23, 2009, the Governing Body issued a resolution that reversed the Board's decision and denied plaintiff's proposal. It rejected the Board's findings and conclusions regarding Lot 9 and instead found that "the proposed use of Lot 9 [would] have the effect of allowing [plaintiff] to bring the business use, namely [plaintiff's] parking area, 10 feet closer to the adjacent residential property located at Lot 8." The Governing Body also determined that the Lot 9 buffer area "would have the effect of allowing [plaintiff] to more intensively use ... Lots 10, 11, and 13."

---

[1] We note that CAPO's action was proper under the MLUL's broad definition of "interested party." *N.J.S.A.* 40:55D–4.

Neither of these results was deemed "consistent with the Master Plan and the Borough's zoning ordinances."

Thus, the Governing Body found that plaintiff's application failed to satisfy either the positive or the negative criteria under *N.J.S.A.* 40:55D-70(d):

(iv) The Governing Body is not persuaded by the expert testimony offered that special reasons exist so that the application satisfies the positive criteria for the granting of a variance pursuant to *N.J.S.A.* 40:55D-70(d)(1). The Governing Body appreciates that a residential property owner could fully landscape a lot as a permitted use. However, an adjacent property owner to such a fully landscaped lot in either a business or residential zone could not rely upon that fully landscaped lot to satisfy setback requirements. Regardless of any deed restrictions placed on Lot 9, [plaintiff's] reliance upon Lot 9 to satisfy the B–1 zone setback requirements inescapably allows [plaintiff] to intensify the permitted uses of Lots 10, 11, and 13 and brings the B–1 zone closer to the R–4 residential zone. The encroachment of the B–1 zone upon the balance of the residential zone does not further the goals of the Master Plan.

(v) The Governing Body finds the testimony of [plaintiff's] planner Paul Phillips credible that the proposed development is consistent with the Borough's Master Plan in that the Master Plan recommends assembling of properties to promote an aesthetically attractive and efficient use of property. However, the Master Plan does not call for the assembling of properties in business and residential zones to permit a more intense development of the business zone. Therefore, the Governing Body does not find that this testimony satisfies any of [plaintiff's] burdens to show that its application satisfies the positive criteria. . . .

(vi) The Governing Body does not object to a fully landscaped Lot 9, but the Governing Body finds that [plaintiff's] proposed intensification of the permitted uses in the B–1 zone through reliance on Lot 9 to satisfy the B–1 zone's required setbacks constitutes a substantial detriment to the public good and causes a substantial negative impact to the adjacent residential properties by bringing the B–1 use, namely [plaintiff's] parking area, 10 feet closer to the adjacent residential properties.

(vii) Neither the Borough's Master Plan nor zoning ordinances contemplate allowing an applicant to use a residential lot to satisfy business zone setbacks, thereby allowing the applicant to intensify the development of lots in the business zone. To permit the unintended expansion of the business zone at the expense of the residential zone cannot be reconciled with the Borough's zoning ordinances and presents a substantial detriment to the public good.

The Governing Body's resolution was published on July 9, 2009.

On August 12, 2009, plaintiff filed a complaint in lieu of prerogative writs with the Law Division seeking the reversal of the Governing Body's decision and the reinstatement of the Board's

approval. CAPO and the Governing Body filed answers denying plaintiff's allegations.[2]

The court heard arguments from all four parties on March 26, 2010, and rendered a decision in a letter opinion dated April 5, 2010. Because "it [was] undisputed that the residential home located on Lot 9 could be razed and developed into a fully landscaped lot," the court found that the proposed use was "suitable" and satisfied the positive criteria. Nevertheless, it determined that "the record support[ed] the Governing Body's conclusions as to the negative criteria." Therefore, the court concluded that "the Governing Body's decision was not made in an arbitrary, capricious, or unreasonable manner":

The Governing Body determined that Plaintiff's proposed use allowed for the commercial development to encroach into the residential zone, directly in conflict with the Master Plan. . . . While the Governing Body acknowledged that the use of Lot 9 as a landscaped buffer would create open space, it found that the proposal compromised the integrity of the Master Plan because it ultimately increased the intensity of the commercial development by encroaching into the residential zone.

. . . .

. . . [T]he Court finds that the Governing Body was not arbitrary, capricious, or unreasonable in finding that Plaintiff had not met its burden of proving the negative criteria to warrant a reversal of the Zoning Board's grant of Plaintiff's use variance. This Court finds that the Governing Body considered the testimony of both planners and the record below in finding that Plaintiff could not demonstrate that its proposal could be met without substantial detriment to the public good and that it would not substantially impair the intent and purpose of Oradell's Master Plan and zoning ordinance.

The Law Division memorialized its decision in an order on April 20, 2010. Plaintiff filed a notice of appeal on May 28, 2010. On appeal, plaintiff argues that its proposal satisfied the positive and negative criteria; the Governing Body improperly rejected plaintiff's "uncontroverted expert testimony"; the trial court failed to consider several existing "non-conformities" that would be eliminated by plaintiff's proposal; and "the trial court erred in affirm-

---

[2] Plaintiff named the Board as a defendant "solely as a necessary and indispensable party to the proceeding." In its answer, the Board "join[ed] in Plaintiff's demand that the Governing Body's action be reversed."

ing the Governing Body's arbitrary, capricious and unreasonable decision." We do not agree.

When reviewing a trial court order concerning a municipal action, we apply the same standard of review as the trial court. *D. Lobi Enters., Inc. v. Planning/Zoning Bd. of Sea Bright,* 408 *N.J.Super.* 345, 360, 974 *A.*2d 1134 (App.Div.2009) (citing *N.Y. SMSA, L.P. v. Bd. of Adj. of Weehawken,* 370 *N.J.Super.* 319, 331, 851 *A.*2d 110 (App.Div.2004)). A zoning decision issued by a governing body [3] is entitled to a "presumption of validity" and may be reversed only where it is "so arbitrary, unreasonable or capricious as to amount to an abuse of discretion." *Jayber, Inc. v. Mun. Council of W. Orange,* 238 *N.J.Super.* 165, 173, 569 *A.*2d 304 (App.Div.) (citing *Comm. for a Rickel Alt. v. City of Linden,* 111 *N.J.* 192, 199, 543 *A.*2d 943 (1988)), *certif. denied,* 122 *N.J.* 142, 584 *A.*2d 214 (1990). In addition, "[b]ecause variances should be granted sparingly and with great caution, courts must give greater deference to a variance denial than to a grant." *N.Y. SMSA, L.P., supra,* 370 *N.J.Super.* at 331, 851 *A.*2d 110 (citing *Nynex Mobile Commc'ns Co. v. Hazlet Twp. Zoning Bd. of Adj.,* 276 *N.J.Super.* 598, 609, 648 *A.*2d 724 (App.Div.1994)).

With respect to the alleged rejection of "uncontroverted expert testimony," we note that a governing body, like a zoning board, need not accept an expert's opinion. *See Bd. of Educ. of Clifton v. Zoning Bd. of Adj. of Clifton,* 409 *N.J.Super.* 389, 434, 977 *A.*2d 1050 (App.Div.2009) ("Zoning boards may choose which witnesses, including expert witnesses, to believe.") (citing *El Shaer v. Planning Bd. of Lawrence,* 249 *N.J.Super.* 323, 329, 592 *A.*2d 565 (App.Div.), *certif. denied,* 127 *N.J.* 546, 606 *A.*2d 360 (1991); *Hawrylo v. Bd. of Adj., Harding Twp., supra,* 249 *N.J.Super.* 568, 579, 592 *A.*2d 1236 (App.Div.1991); *Allen v. Hopewell Twp. Zoning Bd. of Adj.,* 227 *N.J.Super.* 574, 581, 548 *A.*2d 220 (App.Div.), *certif. denied,* 113 *N.J.* 655, 552 *A.*2d 177 (1988)). To hold

---

[3] The MLUL defines "governing body" as "the chief legislative body of the municipality." *N.J.S.A.* 40:55D–4.

otherwise would effectively divest the Governing Body of its discretion by holding its legal determinations hostage to the opinions of expert witnesses. *See Evesham Twp. Zoning Bd. of Adj. v. Evesham Twp. Council, supra,* 86 *N.J.* at 301, 430 *A.*2d 922 (stating that a governing body has "the right to apply its own expertise and knowledge of the community and make the final evaluation based on the record created below"); *Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adj.,* 343 *N.J.Super.* 177, 198, 778 *A.*2d 482 (App.Div.2001) (acknowledging the Legislature's determination that "local citizens familiar with a community's characteristics and interests are best equipped to assess the merits of variance applications").

 Furthermore, we conclude from our independent examination of the record that plaintiff failed to satisfy the positive criteria by establishing Lot 9's "particular suitability" for the proposed use. On this point, the facts of *Funeral Home Management, Inc. v. Basralian, supra,* are instructive. In that case, "the primary basis for the Board's finding of special reasons was its view that the site with [the proposed use] on it would be a buffer or transition between the two zones." *Funeral Home Mgmt., supra,* 319 *N.J.Super.* at 211–12, 725 *A.*2d 64. Nevertheless, we found that the use variance should not have been granted:

> "It can always be said that the border area of a zone is affected by the adjoining uses and that such an area is particularly adaptable to uses pursuant to a variance. However, the lines have to be drawn somewhere if a zone plan is to have any real purpose. The erosion of border areas through variances is destructive of sound zoning and cannot be allowed except where special circumstances beyond those ordinarily associated with zone borders are shown. Plaintiff's property can be put to its zoned use. It already has a dwelling on its northerly portion. Plaintiff's own expert witness testified ... that the subject property could be used for residential purposes. Moreover, the Board itself found that the property can be developed consonant with the existing zone plan. The proposal ... would undoubtedly return plaintiff a larger profit on its investment. That is not the test, however, by which a variance application should be measured."
>
> [*Id.* at 212–13, 725 *A.*2d 64 (first omission in original) (quoting *Cerdel Constr. Co. v. Twp. Comm. of E. Hanover,* 86 *N.J.* 303, 306–07, 430 *A.*2d 925 (1981)).]

The facts here warrant a similar conclusion, and we reject plaintiff's claim that there were "special reasons" for the use

variance. Rather than establishing Lot 9's particular suitability as a landscaped buffer zone, plaintiff's arguments regarding symmetry and efficiency suggest a basis to modify the Oradell zoning map, a remedy that is beyond the scope of this case. *Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adj.*, *supra*, 388 *N.J.Super.* at 78, 906 *A.*2d 454 (" '[A] variance may not be based upon a conclusion . . . that there is no factual justification for the regulation as an act of legislation.' ") (quoting *Bern v. Borough of Fair Lawn*, 65 *N.J.Super.* 435, 451, 168 *A.*2d 52 (App.Div.1961)). Similarly, the claim that the proposed use would eliminate non-conformities does not demonstrate any particular suitability for the proposed use. Therefore, plaintiff failed to establish the positive criteria, and the Governing Body's decision was not arbitrary, capricious, or unreasonable.

We also find support in the record for the Governing Body's determination that plaintiff failed to satisfy the negative criteria. Among other things, the Master Plan seeks "[t]o preserve and enhance the primarily residential character of the existing community by restricting incompatible land uses from established residential areas." Plaintiff's proposal would allow a business enterprise to encroach upon a residential zone by effectively removing all the residential uses of Lot 9. Moreover, as the Governing Body observed, the proposal would move the commercial uses ten feet closer to the residence on Lot 8 and allow more intensive use of Lots 10, 11, and 13. In light of these facts, we agree with the Governing Body's conclusion that "the unintended expansion of the business zone at the expense of the residential zone cannot be reconciled with the Borough's zoning ordinances and presents a substantial detriment to the public good."

Plaintiff's remaining arguments are without sufficient merit to warrant further discussion. *R.* 2:11–3(e)(1)(E). Accordingly, the Law Division's April 20, 2010 order is affirmed.