**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0929-23

MONARCH COMMUNITIES,
LLC, a Limited Liability Company
of the State of Delaware,

     Plaintiff-Respondent,

v.

TOWNSHIP OF MONTVILLE,
MAYOR AND COUNCIL OF
THE TOWNSHIP OF
MONTVILLE,

     Defendants,

and

TOWNSHIP OF MONTVILLE
ZONING BOARD OF
ADJUSTMENT,

     Defendant-Appellant.

_____

JMC INVESTMENTS, LLC,
a New Jersey Limited Liability
Company,

     Plaintiff-Respondent,

v.

TOWNSHIP OF MONTVILLE,
MAYOR AND COUNCIL OF THE
TOWNSHIP OF MONTVILLE,

      Defendants,

and

TOWNSHIP OF MONTVILLE
ZONING BOARD OF
ADJUSTMENT,

      Defendant-Appellant.

_____

Argued January 23, 2025–Decided February 3, 2025

Before Judges Mawla, Walcott-Henderson, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket Nos. L-1986-21 and L-1995-21.

Kelly M. Carey argued the cause for appellant (Pashman Stein Walder Hayden, PC, attorneys; Bruce J. Ackerman and Kelly M. Carey, on the briefs).

Antimo A. DelVecchio argued the cause for respondent (Beattie Padovano, LLC, and Giordano Halleran & Ciesla, PC, attorneys; Antimo A. DelVecchio and Paul H. Schneider, of counsel and on the brief; Daniel L. Steinhagen, on the brief).

PER CURIAM

A-0929-23

Appellant the Township of Montville Zoning Board appeals from a December 23, 2022 order reversing its denial of respondent JMC Investments, LLC's application for d and c variances, related to the construction of a senior housing facility and remanding the application to the board for approval. We affirm.

Respondent proposed to build a 165-unit facility, which had eighty-one apartments for independent and semi-independent residents, fifty-eight assisted living units, and twenty-six memory care units. The property, which was formerly a farm, is comprised of 8.077 acres, and fronts a township road, a county road, and has 510 feet of frontage. Abutting the property is a school bus depot and municipal complex to the north, single family homes to the south and east, and a town house development to the west. The project required variances because the property is located in the township's R-20A residential zone, which and does not permit the type of units respondent proposed to construct.

Respondent sought c variances to construct a building three stories high as the zone allowed a maximum of two and one-half stories. However, the proposed overall height of the building would not exceed the township's zoning ordinance. It sought a variance for building coverage of 17.7%, which was greater than the sixteen percent permitted in the zone. Respondent requested a

variance for thirty-nine percent impervious lot coverage, where the maximum permitted was thirty percent. It requested a parking set back of 4.6 feet from the building and 29.3 feet from the street, where fifteen and fifty feet were required, respectively. Respondent sought a monument sign and an excess slope distance, which are not permitted within the zone.

The township design review committee approved the plan after some adjustments and the application was deemed complete. The board considered testimony on behalf of respondent from: its principal; an engineer; an architect; a traffic engineer; a real estate appraiser; a senior housing analyst; and a professional planner. It also heard testimony from the township engineer and planner.

Respondent committed to constructing twenty-five of the 165 units as affordable units. There would be few cars on the site due to the elderly residents. It offered testimony about the engineering aspects, landscaping, and building design. The traffic engineer explained why there would be little traffic and why the proposed parking was appropriate. The facility would not strain municipal resources because it would have a private ambulance service and staff on-site.

According to the professional planner, the parking complied with the Residential Site Improvement Standards (RSIS) and no variance was required.

A-0929-23

The appraiser explained why the project would have no negative impact on the value of nearby properties. The housing analyst testified there would be significant demand for this use from residents. The professional planner explained the proposed uses were inherently beneficial and the project would not be a substantial detriment to the public good or impair the intent and purpose of the zone plan or township zoning ordinances.

The board denied the application and issued a corresponding resolution on August 4, 2021. It found respondent failed to show the use variances could be granted without substantial detriment to the public good and would not substantially impair the intent and purpose of the zone plan and zoning ordinance. The resolution referenced a nearly identical application by a different party in 2018, requesting the property be rezoned for a senior care facility that was denied by the township committee.

Respondent filed a complaint in lieu of prerogative writs and following a bench trial, the trial court issued a written opinion reversing and remanding the application for reconsideration. The court found "no dispute that the proposed use is 'inherently beneficial.'" The board "concluded essentially the project is too big, too noisy[,] and will create too much traffic." However, the record did not support these conclusions. Although the building was one and one-half

"stories bigger than permitted . . . [t]here [was] no evidence . . . why that [was] a detriment, visual or otherwise."

The trial court noted there were objections to noise that would emanate from the proposed building's trash compactor and generator. "The builder agreed to enclose the area and do a noise test after construction to confirm compliance with noise regulations." The court observed "generators have become almost customary with single family homes after recent storm[-]related power outages." Traffic was not an impediment to the project because "the only testimony was that due to the age and anticipated disabilities of the residents[c]ar ownership and hence traffic would be minimal."

The maximum units per acre permitted by the township was fourteen. The court found the project's proposed 20.1 units per acre was not a bar to approving the application because "the units would be smaller than traditional housing units. The building itself would not be larger than a single-family home were it to be built on the site." The township engineer concluded the landscape plan was excellent. This included a tall berm topped by trees in between the facility and the single-family homes to its south.

The trial court found the record did not support the township's finding the project was too big. There were other large structures "[i]n the immediate

A-0929-23

vicinity[, namely] a bus depot, town house development, Montville Municipal [C]omplex, as well as single family homes." Therefore, "[t]he size would be permitted if it were a house except for [its] height."

The township engineer testified the impervious lot coverage complied with township ordinance. The trial court concluded the excess impervious coverage was not a detriment because "[e]xcept for the height variance, the building complies with current zoning for a single[-]family home." The court pointed out that "[a]ny drainage issue could have been the subject of conditions [imposed by the board] to remedy any problem[,] but none were considered." It does not appear that there were any such issues.

The court found the board was mistaken that it could not grant the application because it could not re-zone the property for the proposed use. The board "offered no legal authority for this position . . . [and] those areas the governing body considered appropriate were never re-zoned to permit this use anywhere."

The trial court reversed and remanded because there was "[n]o appropriate weighing of detriments and conditions" to determine whether to grant the application. Indeed, "[t]he building size remained the principal focus although the [b]oard did not articulate the factual basis for that conclusion." Therefore,

7

"[b]ecause the [b]oard determined not to consider conditions at all, it [was] appropriate to remand . . . for conditions it may wish to impose including but not limited to drainage."  However, the court held the board could not reduce the number of units because respondent met its burden of proof on that issue. The court remanded for consideration of conditions pursuant to Sica v. Board of Adjustment, 127 N.J. 152 (1992).

The board conducted a remand hearing and issued a resolution in accordance with the trial court's remand order on March 1, 2023.  The resolution imposed thirty-seven conditions for approval and noted the board reserved its right to appeal from the trial court's December 23, 2022 order overturning its initial resolution denying respondent's application.

## I.

"When reviewing a trial [judge's] decision regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial [judge].'"  Jacoby v. Zoning Bd. of Adj. of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "[W]hen a party challenges a . . . board's decision through an action in lieu of prerogative writs, the . . . board's decision is entitled to deference."  Kane Props.,

LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). Thus, we must "give deference to the actions and factual findings of local boards and may not disturb such findings unless they [are] arbitrary, capricious, or unreasonable." Jacoby, 442 N.J. Super. at 462.

The Municipal Land Use Law (MLUL) gives zoning boards the power to grant or deny use, density, and height variances. N.J.S.A. 40:55D-70(d). "Because of the legislative preference for municipal land use planning by ordinance rather than variance, use variances [under N.J.S.A. 40:55D-70(d)(1)] may be granted only in exceptional circumstances." Kinderkamack Rd. Assocs., LLC v. Mayor & Council of Borough of Oradell, 421 N.J. Super. 8, 12 (App. Div. 2011).

As a result, "a municipal board of adjustment may permit 'a use or principal structure in a district restricted against such use or principal structure' only where the applicant can demonstrate 'special reasons' for the variance" also known as "positive criteria." Ibid. (quoting N.J.S.A. 40:55D-70(d)(1)). Further, "a variance application must meet the 'negative criteria,' . . . by 'showing that [the] variance can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance.'" Ibid. (alteration in original) (first quoting New Brunswick

Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adj., 160 N.J. 1, 6 (1999), then quoting N.J.S.A. 40:55D-70(d)).

"Special reasons" include "where the proposed use inherently serves the public good, such as a school, hospital or public housing facility." Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adj., 388 N.J. Super. 67, 76 (App. Div. 2006) (citing Sica, 127 N.J. at 159-60). "All use variance applicants must satisfy the first prong of the negative criteria, which requires proof that 'the variance can be granted "without substantial detriment to the public good."'" Kinderkamack Rd. Assocs., LLC, 421 N.J. Super. at 13 (quoting Medici v. BPR Co., 107 N.J. 1, 22 n.12 (1987)).

"[I]f the proposed use is inherently beneficial, the applicant's burden of proof is significantly lessened because 'an inherently beneficial use presumptively satisfies the positive criteria.'" Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adj., 343 N.J. Super. 177, 200 (App. Div. 2001) (quoting Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adj., 152 N.J. 309, 323 (1998)).

> The Legislature has defined an "inherently beneficial use" as one "which is universally considered of value to the community because it fundamentally serves the public good and promotes the general welfare. Such a use includes, but is not limited to, a hospital, school, child care center, group home, or a

10

wind, solar or photovoltaic energy facility or structure." N.J.S.A. 40:55D-4. An inherently beneficial use is evaluated under the standard set forth in Sica . . . . The applicant under this more relaxed standard need not satisfy the "enhanced quality of proof" set forth by the Court in [Medici, 107 N.J. at 21].

Under Medici, the first inquiry under the negative criteria focuses on the potential effects of the variance on the surrounding properties. "The board of adjustment must evaluate the impact of the proposed use variance upon the adjacent properties and determine whether or not it will cause such damage to the character of the neighborhood as to constitute substantial detriment to the public good." Id. at 22 n.12 (internal quotation marks and citation omitted).

Satisfaction of the second prong of the negative criteria analysis normally requires the applicant also "demonstrate through 'an enhanced quality of proof . . . that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance.'"

[Advance at Branchburg II, LLC v. Township of Branchburg Bd. of Adj., 433 N.J. Super. 247, 254-55 (App. Div. 2013) (second omission in original).]

The Sica standard is different and requires:

First, the board should identify the public interest at stake.

. . . .

Second, the [b]oard should identify the detrimental effect that will ensue from the grant of the variance.

. . . .

Third, in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use.

. . . .

Fourth, the [b]oard should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good. This balancing, "[w]hile properly making it more difficult for municipalities to exclude inherently beneficial uses permits such exclusion when the negative impact of the use is significant. It also preserves the right of the municipality to impose appropriate conditions upon such uses."

[127 N.J. at 165-66 (quoting Baptist Home of S. Jersey v. Riverton, 201 N.J. Super. 226, 247 (Law Div. 1983)).]

## II.

The board contends the trial court's decision usurped the power of the planning board, which had previously been asked twice to permit this use on the site and denied it when it updated the Montville master plan in 2019. It argues it was reasonable for it to conclude respondent's application was substantially inconsistent with the intent and purpose of the zoning plan and township ordinances.

A-0929-23

The board asserts it properly applied the <u>Sica</u> balancing test when it considered respondent's application. It found the use inherently beneficial, but then weighed the detrimental effects, namely the excessive density, which was far beyond the norm and comparable facilities, and the fact the facility was detrimental in a residential zone, and respondent did not show why the facility could not be constructed as a two and one-half story building with fewer units like other congregate care facilities. Other detrimental effects included the aesthetics, noise, and traffic created by having a facility next to a private residential development. Respondent also lacked an evacuation plan in violation of the MLUL and did not amend its application to include a reduction of proposed units or the otherwise-stated necessities for conformity with township ordinances. Therefore, the board claims it properly concluded the detriments were too pervasive to be remedied by the imposition of conditions.

The board argues it analyzed each of respondent's requests for the seven requested c variances and respondent failed to show a need for them based on a hardship or that the variances would conform with the neighborhood scheme. It alleges it had the discretion to reject some or all of respondent's expert opinions even where there was no contradictory expert testimony. The board considered

A-0929-23

all the expert testimony and explained why it accepted or rejected it. Therefore, it argues it did not act in an arbitrary, capricious, or unreasonable manner.

The board asserts the trial court impinged on its authority to impose conditions on the granting of a variance. The court's decision prevented it from addressing "the main negative effects" of the proposal by reducing the number of units. If the court felt the application represented an inherently beneficial use that had to be approved, it should have limited its finding accordingly and allowed the board to impose all appropriate mitigating conditions as required by Sica. In essence, the court restrained the board from applying the third prong of Sica.

The trial court also misapplied Sica because it "oversimplified" the board's concerns about the size, noise, and traffic issues associated with the project. The court also did not understand the scale of the building when it found it would not be larger than a single-family home.

The board argues the trial court ignored its expert's testimony that the building's flatter roof design would not be in conformity with the township's requirements for a residential area. It notes the court erroneously recounted the board's vote on the resolution was nearly evenly split, whereas a clear majority of the board voted to deny the application.

The board urges us to reinstate its decision because it followed Sica and concluded the building had a significant negative impact and was contrary to the updated master plan. At a minimum, the board requests us to remand for a full consideration of the d and c variances, design waivers, and other conditions necessary for rezoning.

## III.

We reject the board's argument that respondent's application was impermissible because the zoning board omitted the property from being used for senior housing. The record shows the township's master plan had not yet been adopted and had not included a specific vision for respondent's property. The master plan controls only once it has gone into effect. N.J.S.A. 40:55D-89. Further, the fact that other properties have been zoned for senior care did not preclude respondent's property from being rezoned by granting a use variance. See generally N.J.S.A. 40:55D-70(d); Sica, 127 N.J. at 162-63.

There is no credible argument why the requested variances to allow senior housing on respondent's property would substantially deviate from the current scheme, which includes single family residences, a bus depot, and a municipal complex. Given the undisputed inherently beneficial use of senior housing, the trial court correctly found the board acted unreasonably when it concluded the

15

detrimental effects of: allegedly poor aesthetics, including height and density; noise and traffic levels; and parking, warranted denial of the variances and the application. The record amply supports the trial judge's findings rejecting these claims.

The proposed number of parking spaces complied with the RSIS, N.J.A.C. 5:23-4.14, and the board's engineer even recommended a reduction of the parking. The noise concerns pertaining to the facility's trash compactor are also unpersuasive because it was located opposite the residential area, facing the bus depot, and the board's engineer was satisfied it could be tested for noise compliance after construction. Moreover, the trial court afforded the board the opportunity to impose conditions under the third prong of Sica to address these issues and the others it raised, but the board did not follow suit.

The only restriction imposed by the trial court was to rule the board could not require respondent to decrease the 165 units proposed in its application. It is obvious from our review of the record that without this restriction, the board could at once approve the application but also condition it on the construction of a smaller number of units, effectively extinguishing the viability of the

project. The gravamen of the board's opposition was based on the size of the building and the units it contained.[1] This would lead to an unreasonable result.

For these reasons, we reject the board's assertion the trial court limited its authority to act on remand or prevented the board from engaging in a Sica analysis. The unique circumstances of this case support the trial judge's findings of fact and conclusions of law the project did not have a significant negative impact. We discern no reversible error. To the extent we have not addressed an argument on appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] Although on appeal the board seizes on the trial court's finding that the building was similar in size to a single-family residence, it is clear the court was referring to the similarity in height and setbacks. We part ways with the board's suggestion the court misunderstood the facts and equated the square footage and number of rooms of the proposed facility with a single-family residence.