**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4690-17T4

ARLENE FITZPATRICK
YARBROUGH,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

TOWNSHIP OF MILLSTONE,

     Defendant-Respondent/
     Cross-Appellant,

and

GAELIC COMMUNICATIONS
and ZONING BOARD OF
ADJUSTMENT OF THE
TOWNSHIP OF MILLSTONE,

     Defendants-Respondents.

_____

Submitted March 30, 2020 – Decided June 1, 2020

Before Judges Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0029-17.

Post Polak, PA, attorneys for appellant/cross-respondent (Anne L.H. Studholme, on the briefs).

Davison, Eastman, Muñoz, Paone, PA, attorneys for respondent/cross-appellant (James M. McGovern, on the briefs).

Garofalo O'Neill Ruggierio, LLC, attorneys for respondent Gaelic Communications (Joseph Anthony O'Neill, on the brief).

Collins, Vella & Casello LLC, attorneys for respondent Zoning Board of Adjustment of the Township of Millstone (Gregory Walter Vella, of counsel and on the brief).

PER CURIAM

Plaintiff Arlene Fitzpatrick Yarbrough appeals from a September 26, 2017 order dismissing with prejudice her complaint against defendant Township of Millstone (Millstone); a September 29, 2017 order denying in part her motion to supplement the record; and a May 4, 2018 order dismissing her action in lieu of prerogative writs challenging the Township of Millstone Zoning Board of Adjustment's (Board) resolution granting use, height, and bulk variances for construction of a cell tower facility on property Millstone leased to defendant Gaelic Communications (Gaelic). Millstone cross-appeals from that portion of the court's May 4, 2018 order denying its motion for counsel fees pursuant to N.J.S.A. 2A:15-59.1. We have carefully reviewed the record in light of the

2

A-4690-17T4

applicable legal principles, and we affirm the orders challenged on plaintiff's appeal and Millstone's cross-appeal.

I.

On January 7, 2015, Millstone accepted Gaelic's bid and awarded Gaelic a lease for municipal property located at 237 Woodville Road to allow for Gaelic's construction of a cell tower facility. As a condition of its award of the lease, Millstone required Gaelic to obtain "Use Variance and Preliminary and Final Site Plan Approval" from the Board. Specifically, Gaelic was required to obtain: (1) a use ("D") variance because "cell towers are not a permitted use" at the property under Millstone's zoning ordinance and Master Plan; (2) a height variance because Gaelic proposed "a total height of 153 feet, where a maximum height in the zone is 35 feet"; and (3) several bulk variances, including a rear yard setback variance, a lot coverage requirement variance, a tower setback variance, a residential dwelling setback variance, and a residential district setback variance.

The Board conducted two public hearings on Gaelic's application for the necessary variances. Plaintiff attended both hearings as a member of the public. At the first hearing, Gaelic presented two witnesses: Dominic Villecco, who was qualified as an expert in radio frequency conditions and Federal

Communications Commission (FCC) requirements for a cell tower; and Matthew Bartlett, who testified as a fact witness about the steps taken to acquire the cell tower site.

Villecco testified the existing cell service in the area was insufficient, and there was a two-square-mile gap in cellular phone service in the area around the proposed cell tower site. He explained placement of the cell tower on the property will remedy the coverage gap, address cellular service capacity issues, and provide a necessary component of the cellular network. He also confirmed the site fully complied with FCC regulations. Bartlett testified generally about the process of locating cell tower sites and the process leading to the selection of the proposed cell tower site. He also described the numerous alternative sites that were considered for construction of the cell tower and the reasons the other sites were deemed unsuitable.

After hearing from Gaelic's witnesses, the Board heard public comments. Plaintiff spoke first. She asserted the proposed cell tower was "basically . . . in [her] front yard," and she asked about possible alternative sites. Villecco reiterated many alternatives were considered and rejected for various reasons, and he concluded "there's actually no sites nearby here . . . available to us."

A-4690-17T4

Plaintiff further objected to use of the site because of its proximity to the St. James Church. After describing the church's history, plaintiff declared "there's a lot of history in that area," and a cell tower would "downgrade the history of our property." She asked the Board members to "understand . . . our history is there," and she again expressed concern about her personal home, stating "[b]asically when I get on my porch and look out I'm going to look dead at the cell tower. You know, that's not right. Totally not right."

Reverend Pedro Castelli of the St. James Church also spoke, and he questioned whether the Board could allow the cell tower next to "historical sites" like the church. In response, Gaelic's attorney noted the church had not actually been designated a historical site by the state or federal government. Additionally, the Board's attorney stated the Millstone Historical Preservation Commission had issued a report that the property where the cell tower would be built was a "vacant parcel . . . not part of the county or the Township historical site inventory."

During his comments to the Board, Reverend Castelli also acknowledged and explained there were difficulties with the cellular service available at the church, and he noted a lack of cellular coverage at the church.

During the second hearing on its application, Gaelic produced two more witnesses: Christopher Nevill, P.E., who was qualified as a professional engineer; and David Karlebach, P.P., who was accepted as an expert in planning. Nevill testified about the existing conditions on the site, and he reviewed the plans for the site. He also described the proposed structures to be built, including a monopole, an equipment shelter, a wooden fence, and an access road. After discussions with the Board's engineer conducted on the record, Nevill agreed, on Gaelic's behalf, to add landscaping around the perimeter of the site to screen it from view from the residential neighbors. Nevill further confirmed the area would be "low traffic," and the site would meet noise standards. The Board members asked numerous logistical and environmental questions, and Nevill further agreed to adjust the proposed location of a generator to a different location within the site to reduce noise impact.

Karlebach testified about the proposed monopole and the other structures that would be constructed on the site in light of the local ordinances, the Master Plan, and the variances being sought. Karlebach confirmed that Verizon, as the carrier that would initially utilize the monopole, holds four FCC licenses. Karlebach explained each of the proposed conditions that were at variance with the zoning ordinance. These conditions all related to the size and location of the

property, and the Township Committee was aware of these deviations when it consented to the application. Karlebach addressed the use variance request by discussing the four-step balancing test adopted by our Supreme Court for a Board to employ when deciding use variance applications for wireless communications facilities. He also addressed the circumstances supporting the height and bulk conditions for which Gaelic sought variances. After providing his expert opinion as to each prong of the balancing test, Karlebach concluded, "I believe this wireless provider has presented to the Board the least intrusive method of providing service into this area, and this proposal allows for the safe and efficient operation of a system without degradation for the environment or without interfering with the enjoyment of property."

After Gaelic completed presentation of its evidence, the Board again heard public comments. Plaintiff again requested the Board consider the effects the proposal would have on the area, stating "I think we deserve more than a cell tower . . . in our backyard."

After hearing public comments, the Board members discussed the application. The members agreed with the expert testimony that improved cellular coverage was required, and they concluded Gaelic adequately considered many options and "this does seem like the best place in town if you

have to put a tower somewhere." After highlighting the importance of having reliable cellular coverage in cases of emergencies, the Board members unanimously approved the application.

The Board memorialized its decision in an October 26, 2016 resolution. The resolution found Gaelic satisfied the positive and negative criteria for a use variance codified in N.J.S.A. 40:55D-70(d), and it granted the use variance. The resolution also granted the height variance after "mak[ing] the same findings as it relates to the [u]se [v]ariance." Finally, the resolution granted the requested bulk variances after finding Gaelic satisfied the positive and negative criteria for those variances as well.

On December 16, 2016, plaintiff filed a complaint in lieu of prerogative writs against Millstone and the Board. The complaint alleged the Board's action was arbitrary, capricious, and unreasonable because the Board failed to: (1) consider the "vulnerability and importance of the historic structures"; (2) appropriately consider or address the impacts on the surrounding residences; (3) apply the proper legal test; and (4) consider the availability of alternative sites. Additionally, the complaint challenged Millstone's award of the lease to Gaelic, asserting Millstone's action was arbitrary, capricious, and unreasonable because

it ignored (1) the welfare of the neighbors and (2) the historic significance of the St. James Church.

Millstone sent a June 8, 2017 letter to plaintiff's counsel, demanding withdrawal of the complaint and claiming the complaint was frivolous because it was not filed within forty-five days of Millstone's January 7, 2015 award of the lease to Gaelic. Millstone asserted, among other things, that the complaint was untimely and warned it would seek sanctions in accordance with Rule 1:4-8 if plaintiff did not dismiss her complaint.

The complaint was not withdrawn, and, in June 2017, Millstone filed a motion to dismiss plaintiff's complaint. Following oral argument, the court granted Millstone's motion, finding the complaint was filed beyond the forty-five-day deadline in Rule 4:69-6(a). The court entered a September 26, 2017 order dismissing the complaint as to Millstone with prejudice, and it granted plaintiff leave to file an amended complaint.

On September 29, 2017, the court conducted a hearing on plaintiff's application to expand the record as part of her argument the Board failed to consider relevant evidence as to the historical significance of the St. James Church. Following the hearing, the court entered an order allowing plaintiff to supplement the record with the Monmouth County Historic Sites Inventory and

the Master Plan of the Township of Manalapan, but not with a June 30, 2016 letter and attachment from a cultural resource consulting firm, RGA, Inc., concerning the St. James Church.[1]

On October 18, 2017, plaintiff filed a first amended complaint, adding Gaelic as a defendant. On January 9, 2018, Millstone filed a motion for attorney's fees and sanctions against plaintiff for frivolous litigation pursuant to N.J.S.A. 2A:15-59.1 and Rule 1:4-8(b). Millstone sought attorney's fees and costs totaling $5,209.20.

The court conducted a trial de novo on the record before the Board, as supplemented in accordance with the court's prior order, and it heard argument on Millstone's motion for sanctions. In a detailed decision rendered from the bench, the court upheld the Board's approval of the requested variances and denied Millstone's motion for attorney's fees and sanctions.

---

[1] As part of its process of identifying a suitable location for the cell tower, Gaelic tasked RGA, Inc. with investigating the historic nature of the proposed site. In the June 30, 2016 letter at issue, RGA, Inc. wrote to Piia Helve, the Historic Preservation Specialist at the New Jersey Historic Preservation Office (HPO), and it requested information on how the proposed cell tower could affect the St. James Church. RGA, Inc. opined that "because the existing wooded area will be maintained as a screen between the church property and the tower, the project will have no adverse effect on the church." In a June 6, 2017 email, Helve stated the HPO agreed "the [cell] tower construction would not constitute a visual adverse effect on the St. James [] Church."

A-4690-17T4

The court found the Board "considered thoroughly . . . all of the appropriate evidence in the case," and it "rendered and approved . . . an extremely detailed resolution of approval of the application." The court also found the Board's factual findings were supported by "both expert testimony and lay testimony" Gaelic presented during the hearings.

The court also addressed the Board's determinations concerning the positive and negative criteria supporting its decision, and the court found the Board adequately considered these criteria in granting the use, height, and bulk variances. The court noted our Supreme Court has found "cell towers may . . . provide a general benefit to the community," but it "fell short of determining that they are inherently beneficial." The judge found the Board "clearly and rightfully" was concerned with the gap in coverage for wireless communication, "clearly understood . . . the location of the church and its significance and importance to the community," and "considered the impact that this application would have on the church."

The court concluded: (1) the Board properly approved the application after applying the appropriate criteria; (2) the variances were granted in accordance with the "overwhelming evidence" presented at the hearings; (3) the Board had appropriate evidence to make its findings; and (4) the Board applied the

A-4690-17T4

appropriate law. The court determined the Board did not act in an arbitrary, unreasonable or capricious manner "with respect to the approvals."

The court also denied Millstone's application for attorney's fees, finding plaintiff filed the complaint in good faith and under the belief Millstone was an appropriate party to the litigation. The judge entered a May 4, 2018 order dismissing the complaint and denying Millstone's motion for sanctions. Following entry of the order, plaintiff appealed and Millstone cross-appealed.

## II.

### A.

"Our standard of review for the grant or denial of a variance is the same as that applied by the Law Division." Advance at Branchburg II, LLC v. Branchburg Bd. of Adjustment, 433 N.J. Super. 247, 252 (App. Div. 2013). Local boards of adjustment have "peculiar knowledge of local conditions [and] must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 597 (2005). A local board's decision "enjoy[s] a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). Indeed, "[t]he proper scope of judicial review is not to suggest a decision that may be better than the one made by the

A-4690-17T4

board, but to determine whether the board could reasonably have reached its decision on the record." Jock, 184 N.J. at 597 (citing Kramer v. Bd. of Adjustment of Sea Girt, 45 N.J. 268, 296 (1965)).

"'[T]he action of a board will not be overturned unless it is found to be arbitrary and capricious or unreasonable, with the burden of proof placed on the plaintiff challenging the action.'" Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Franklin, 233 N.J. 546, 558 (2018) (alteration in original) (quoting Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015)). "A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of [its decision] are not supported by the record, . . . or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013) (first citing Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998), then citing Leimann v. Bd. of Adjustment of Cranford, 9 N.J. 336, 340 (1952)). "[W]hether the action was unreasonable, arbitrary or capricious must be decided upon the basis of what was before the . . . board and not on the basis of a trial de novo . . . before the Law Division." Antonelli v. Planning Bd. of Waldwick, 79 N.J. Super. 433, 440-41 (App. Div. 1963).

Pursuant to Article 9, N.J.S.A. 40:55D-69 to -76, of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, a board of adjustment has the power to grant variances in certain circumstances. Local boards of adjustment may grant use variances under N.J.S.A. 40:55D-70(d)(1) where the applicant proves both "special reasons," otherwise known as positive criteria, as well as negative criteria. Price, 214 N.J. at 285; accord Smart, 152 N.J. at 323. "'[S]pecial reasons' takes its definition and meaning from the general purposes of the zoning laws" and a court "must look to the purposes of the [MLUL] . . . to determine what is a special reason." Burbridge v. Twp. of Mine Hill, 117 N.J. 376, 386 (1990) (citation omitted). For the negative criteria, the applicant must prove that "the variance 'can be granted without substantial detriment to the public good[,]' and that it 'will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.'" Sica v. Bd. of Adjustment of Wall, 127 N.J. 152, 156 (1992) (quoting N.J.S.A. 40:55D-70(d)).

Plaintiff argues the trial court erred in upholding the Board's decision granting the requested variances. Plaintiff claims the Board's findings of fact and conclusions of law as to the use, height, and bulk variances were without sufficient bases in fact and law. In particular, plaintiff takes issue with the Board's application of the positive and negative criteria to grant the use variance

under N.J.S.A. 40:55-70(d). According to plaintiff, the Board failed to consider the site's "particular suitability" during its analysis of the positive criteria, and it failed to consider the impact on the St. James Church and other neighbors in its analysis of the negative criteria. We are not persuaded.

Plaintiff's claim Gaelic failed to present evidence establishing the positive criteria is undermined by the record. "Our case law recognizes three categories of circumstances in which the 'special reasons' required for a use variance may be found." Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 76 (App. Div. 2006). Here, Gaelic and the Board relied solely on the special reason that the use of the property "would serve the general welfare because 'the proposed site is particularly suitable for the proposed use.'" Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 102 (2011) (quoting Saddle Brook Realty, 388 N.J. Super. at 76).[2]

---

[2] The other categories of circumstances in which special reasons may be found are: "(1) where the proposed use inherently serves the public good, such as a school, hospital or public housing facility; [and] (2) where the property owner would suffer 'undue hardship' if compelled to use the property in conformity with the permitted uses in the zone." Nuckel, 208 N.J. at 102 (internal citations omitted) (quoting Saddle Brook Realty, 388 N.J. Super. at 76). The first category does not apply here because our Supreme Court has held construction of cell towers or monopoles does not serve an inherently beneficial use. Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 90-91 (2002); see also Smart SMR, 152 N.J. at 329. The second category is inapplicable because Gaelic does not claim undue hardship.

A-4690-17T4

"The positive criteria requirement for a use variance is satisfied when [the] applicant . . . demonstrate[s] . . . the 'use promotes the general welfare because the proposed site is particularly suitable for the proposed use.'" Cell S. of N.J., 172 N.J. at 84 (quoting Medici v. BPR Co., 107 N.J. 1, 4 (1987)). "With telecommunications towers, an FCC license generally establishes that the use promotes the general welfare," New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adjustment, 160 N.J. 1, 14 (1999), and, here, the unrefuted evidence established Verizon, which will use the cell tower, holds the necessary FCC licenses.

In Smart, however, the Court determined that, while an FCC license is generally sufficient to establish the general welfare aspect of the positive criteria, where a cell tower or monopole is involved, "the applicant must prove that the site is particularly suited for that use." 152 N.J. at 336. To demonstrate site suitability, "the applicant initially must show the need for the facility at that location." New Brunswick Cellular Tel. Co., 160 N.J. at 14. Relevant to that showing is evidence that the applicant has made a "reasonable and good faith effort to find an alternative, less-intrusive site." Ocean Cty. Cellular Tel. Co. v. Twp. of Lakewood Bd. of Adjustment, 352 N.J. Super. 514, 528 (App. Div. 2002).

Gaelic satisfied its burden of proving the positive criteria by presenting unrefuted evidence and testimony establishing the cell tower is necessary to remedy a two-square-mile gap in cellular coverage; the topography of the area requires a monopole to provide cellular coverage and future coverage capacity; and it considered numerous alternative sites that, for various reasons, are unsuitable.[3]  See, e.g., New Brunswick Cellular Tel. Co., 160 N.J. at 14-15 (finding a need for the installation of a "monopole to meet the public demand for telecommunications in the area" in part supports a determination the monopole site is particularly suitable); N.Y. SMSA, LP v. Bd. of Adjustment of Weehawken, 370 N.J. Super. 319, 340 (App. Div. 2004) (finding the particular suitability of a wireless communication facility site was established by expert testimony and evidence that the site would redress cellular coverage issues, and "that no technically comparable alternate sites are available").  Moreover, "[n]o competing evidence, expert or otherwise, was presented . . . to counter" the evidence and testimony presented by Gaelic establishing the site's particular

---

[3]  We note that, although a determination that a property is particularly suitable for the proposed use requires "an analysis that is inherently site specific," Price, 214 N.J. at 288, an applicant is not required to prove the property is unique, in the sense that it is "the only possible location for the particular project," id. at 287.

suitability as the cell tower's location. <u>Ocean Cty. Cellular Tel. Co.</u>, 353 N.J. Super. at 526. Thus, the evidence supports the Board's finding Gaelic presented sufficient evidence satisfying the positive criteria.

We similarly find no error in the court's determination Gaelic proved the negative criteria. Determination of the "negative criteria" involves two independent questions: (1) whether the variance "can be granted without substantial detriment to the public good"; and (2) whether the variance "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." <u>Price</u>, 214 N.J. at 286 (quoting N.J.S.A. 40:55D-70). The showing required to satisfy the first prong of the negative criteria "focuses on the effect that granting the variance would have on the surrounding properties," while the proof required to satisfy the second prong "must reconcile the grant of the variance . . . with the municipality's contrary determination about the permitted uses as expressed through its zoning ordinance." <u>Ibid.</u> (citing <u>Medici</u>, 107 N.J. at 21-22).

Utilizing a balancing process, the Board must weigh "the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good." <u>Smart</u>, 152 N.J. at 332 (quoting <u>Sica</u>, 127 N.J. at 166). Specifically, our Supreme Court in <u>Sica</u>

18

suggested municipal boards utilize the following test when balancing the positive and negative criteria:

> First, the board should identify the public interest at stake. Some uses are more compelling than others . . . . Second, the Board should identify the detrimental effect that will ensue from the grant of the variance . . . . Third, in some situations, the local board may reduce the detrimental effect by imposing reasonable conditions on the use. If so, the weight accorded [to] the adverse effect should be reduced by the anticipated effect of those restrictions . . . . Fourth, the Board should then weigh the positive and negative criteria and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good.
>
> [127 N.J. at 165-66 (internal citations omitted).]

The Court has held that "[a] telecommunications facility is a paradigm for a use that serves a greater community than the particular municipality" and serves the public interest in access to telecommunication services. Smart, 152 N.J. at 332-33. "Proof of an adverse effect on adjacent properties and on the municipal land use plan . . . generally will require qualified expert testimony." Id. at 336. "Bare allegations that the construction of a tower or monopole will cause a decline in property values rarely will suffice." Ibid. Applying these standards, we are satisfied the record demonstrates the Board properly engaged

19

in this analysis before granting the use variance, and the trial court therefore correctly upheld the Board's decision.

The Board accepted the testimony of Gaelic's expert planner Karlebach, who testified in detail concerning each of the four elements of the Sica balancing test. See Sica, 127 N.J. at 165-66. First, in considering the public interest at stake, Karlebach testified about the cellular service gap in the area and the need for a cell tower facility to remedy that deficiency. He also explained the site was particularly suitable because of the area's "rolling topography" and "curvilinear roadways," the paucity of residential development, the mature vegetation, and the limited visibility of the proposed monopole. He also noted the site was "vacant and wooded," and he confirmed Gaelic's telecommunications carrier, Verizon, holds four FCC licenses.

Second, the Board addressed the detrimental effects that might result from the granting of the variance, including that the monopole might be seen from nearby properties and operation of the cell tower might generate noise. On Gaelic's behalf, Karlebach addressed those potential negative impacts and opined the use variance could be granted without "substantial detriment." N.J.S.A. 40:55D-70. He explained there would be limited visibility of the proposed facility because of the (1) "paucity of residential development in this

20

area"; (2) "mature vegetation surrounding the site"; and (3) "rolling topography and the curvilinear roadway network."  He further detailed the proposed site's limited impact, noting it would be unmanned; it would not increase the demand for municipal services like water or sewer; and, due to its construction and mode of operation, it would not generate excessive noise.  He also testified the monopole would be painted in a manner minimizing its visibility.

Third, the Board also acted to reduce the detrimental effects of the proposed use by imposing reasonable conditions.  As memorialized in the October 26, 2016 resolution, the Board conditioned its approval of the variances on Gaelic: (1) modifying its landscape plan to add white pines instead of arborvitaes; (2) adding additional landscaping to act as a buffer between the compound and adjoining properties; and (3) revising the plans to relocate the diesel generator to a different portion of the site and to add sound attenuation materials to the air conditioning unit.  Thus, the record demonstrates the Board properly addressed the third prong of the Sica standard.

Finally, the Board satisfied the fourth prong of the Sica standard by weighing the positive and negative criteria—the public interest and suitability against the detrimental effects.  In its resolution, the Board concluded "the minor visual identification is far outweighed by the benefits of having cell phone

A-4690-17T4

coverage, especially for emergency situations." Indeed, the Board's conclusion is supported by case law finding such a facility "is a paradigm for a use that serves a greater community." Smart, 152 N.J. at 332-33. In addition, the Board was not presented with any expert testimony of any "adverse effect on adjacent properties," including plaintiff's residence or the St. James Church, and plaintiff's "bare allegations" the cell tower "will cause a decline in property values" are insufficient to support a reversal of the Board's decision. Id. at 336.

In sum, substantial record evidence supports the Board's findings the cell tower serves an important public interest; any detrimental effects on adjacent properties are minor; and the reasonable conditions imposed by the Board ameliorate some of those effects. See Sica, 127 N.J. at 165-66. Weighing the positive and negative criteria, we conclude, as did the trial court, that the substantial evidence in the record supports the Board's grant of the use variance. Id. at 166.

Moreover, we are convinced the Board's findings concerning the height and bulk variances establish they "both advance the purpose of the MLUL and create benefits that outweigh any detriment caused by deviating from the zoning ordinance." Price, 214 N.J. at 301; see also Puleio v. N. Brunswick Twp. Bd. of Adjustment, 375 N.J. Super. 613, 621 (App. Div. 2005) (explaining "[a] Zoning

Board, in considering a 'use' variance, must then consider the overall site design," and, as a result, "the 'c' variances are subsumed in the 'd' variance"). We therefore affirm the Board's resolution granting the requested use, height, and bulk variances.

B.

Plaintiff also contends the court erred by only allowing her to supplement the record with two documents, but not the June 30, 2016 letter and attachment from RGA, Inc. to HPO. We find the argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments.

Generally, "the record made before the Board is the record upon which the correctness of the Board's action must be determined, and the receipt of testimony before the Superior Court is no substitute for this requirement." Kramer, 45 N.J. at 289 (citing Kempner v. Edison Tp., 54 N.J. Super. 408, 416-17 (App. Div. 1959)). Additionally, "[a]s a general rule, admission or exclusion of proffered evidence is within the discretion of the trial judge whose ruling is not disturbed unless there is a clear abuse of discretion." Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment of Clifton, 409 N.J. Super. 389, 430 (App. Div. 2009) (citing Dinter v. Sears, Roebuck & Co., 252 N.J. Super. 84, 92 (App. Div.

1991)).  Indeed, we "grant substantial deference to the trial judge's discretion on evidentiary rulings." Ibid. (citing Benevenga v. Digregorio, 325 N.J. Super. 27, 32 (App. Div. 1999)).  "Reversal is unwarranted unless the trial judge's ruling was 'so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting State v. Carter, 91 N.J. 86, 106 (1982)).

Here, plaintiff concedes a court is generally confined to the record made by the agency appealed from when reviewing actions pursuant to a prerogative writs action.  Plaintiff, however, contends the court abused its discretion by rejecting her request to supplement the record with the June 30, 2016 letter and attachment from Gaelic's cultural resource consultant, RGA, Inc., which plaintiff asserts highlights the historic nature of the St. James Church.

We reject the argument the court abused its discretion because it granted plaintiff's motion to supplement the record with the Manalapan Master Plan, which showed the church's historic nature.  Thus, at best, the RGA, Inc. letter would have been unnecessarily cumulative.  Further, the RGA, Inc. letter would not have supported a different result because it includes information adverse to plaintiff's position and further supporting the Board's findings of the positive and negative criteria and its weighing of the criteria.  More particularly, the letter declares that Gaelic's cell tower "project as proposed will have no adverse

effect on the St. James A.M.E. Church." Thus, supplementing the record with the letter would have only undermined plaintiff's claims. We find no basis in the record to conclude the court abused its discretion by denying plaintiff's request to supplement the record with the letter, and, even if the court did err by denying plaintiff's request, the error is not clearly capable of producing an unjust result. R. 2:10-2.

## C.

We find it unnecessary to address and decide plaintiff's argument the court erred by dismissing her complaint against Millstone because it was not filed within the forty-five-day deadline for filing an action in lieu of prerogative writs in Rule 4:69-6(a). Plaintiff's complaint against Millstone is based on the assertion Millstone erred by awarding the lease to Gaelic because Gaelic could not obtain the proper variances for use of the site for a cell phone tower. Indeed, plaintiff argues she was required to await Gaelic's exhaustion of administrative remedies before the Board to obtain the variances before her challenge to Millstone's award of the lease became ripe for an action in lieu of prerogative writs.

We have determined the Board properly granted the necessary variances to Gaelic. As a result, the factual premise underlying plaintiff's claim against

Millstone is no longer extant. Whether plaintiff's complaint was timely filed under Rule 4:69-6(a) is therefore a moot issue; its determination is irrelevant to the disposition of this appeal.

D.

Last, we affirm the motion court's denial of Millstone's motion for fees and sanctions against plaintiff pursuant to Rule 1:4-8. The court held plaintiff filed her complaint against Millstone in good faith and under the belief Millstone was an appropriate party to this litigation.

We review the court's decision on a motion for frivolous lawsuit sanctions under an abuse-of-discretion standard. Bove v. AkPharma Inc., 460 N.J. Super. 123, 146 (App. Div. 2019). Reversal is warranted "only if [the decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011) (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

N.J.S.A. 2A:15-59.1(a)(1), which governs frivolous lawsuit claims against parties such as the claim asserted against plaintiff, provides that:

> [a] party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the

proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.

For the purpose of the statute, a finding that the pleading is "frivolous" must be based upon a finding that:

(1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or

(2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

[N.J.S.A. 2A:15-59.1(b)(1) to (2).]

For purposes of imposing sanctions under Rule 1:4-8, an assertion is deemed "frivolous" when "no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable." United Hearts, LLC v. Zahabian, 407 N.J. Super. 379, 389 (App. Div. 2009). "Where a party has [a] reasonable and good faith belief in the merit of the cause, attorney's fees will not be awarded." First Atl. Fed. Credit Union v. Perez, 391 N.J. Super. 419, 432 (App. Div. 2007) (citing DeBrango v. Summit Bancorp., 328 N.J. Super. 219, 227 (App. Div. 2000)). When considering sanctions under

<u>Rule</u> 1:4-8, the court must give a "restrictive interpretation" to the term "frivolous" in order to avoid limiting access to the court system. <u>Id.</u> at 433 (quoting <u>McKeown-Brand v. Trump Castle Hotel & Casino</u>, 132 N.J. 546, 561-62 (1993)). "'[T]he burden of proving that the non-prevailing party acted in bad faith' is on the party who seeks fees and costs pursuant to N.J.S.A. 2A:15-59.1." <u>Ferolito v. Park Hill Ass'n</u>, 408 N.J. Super. 401, 408 (App. Div. 2009) (quoting <u>McKeown-Brand</u>, 132 N.J. at 559).

The record is bereft of evidence demonstrating that any facts asserted by plaintiff in her complaint were false, or that she filed the complaint in bad faith or for a malicious purpose. Additionally, although we have explained it is unnecessary to determine if the court correctly concluded the complaint against Millstone was time-barred under <u>Rule</u> 4:69-6(a), we are persuaded plaintiff's reliance on <u>Rule</u> 4:69-5, which provides that "[e]xcept where it is manifest that the interest of justice requires otherwise, actions under <u>R.</u> 4:69 shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted," and the principles addressed by the Court in <u>Griepenburg v. Twp. of Ocean</u>, 220 N.J. 239, 261 (2015), supported a reasonable, albeit unsuccessful, argument she was required to await the completion of the proceedings before the Board before the forty-

28

five-day period for the filing of her complaint against Millstone began. We therefore find no abuse of discretion in the court's denial of Millstone's motion for <u>Rule</u> 1:4-8 sanctions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4690-17T4