906 A.2d 454

SADDLE BROOK REALTY, LLC, PLAINTIFF–APPELLANT, v. TOWNSHIP OF SADDLE BROOK ZONING BOARD OF ADJUSTMENT AND 580 BRIGHTON ROAD ASSOCIATES, DEFENDANTS–RESPONDENTS, AND GRILLCO TWO, LLC, DEFENDANT/THIRD–PARTY PLAINTIFF–RESPONDENT, v. TOWNSHIP OF SADDLE BROOK, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued May 16, 2006—Decided September 11, 2006.

Before Judges SKILLMAN, PAYNE and SABATINO.

*Nicole Bearce Albano,* argued the cause for appellant (*Lowenstein Sandler,* attorneys; *Ms. Albano,* of counsel; *Jameson P. Van Eck,* on the brief).

*Antimo A. DelVecchio,* argued the cause for respondent Grillco Two (*Beattie Padovano,* attorneys; *Mr. DelVecchio,* of counsel; *Noah B. Pollak,* on the brief).

*Andrew M. Cimiluca,* attorney for respondent Township of Saddle Brook Zoning Board of Adjustment, relies upon brief filed on behalf of respondent Grillco Two.

*Sunshine, Atkins, Minassian & Tafuri,* attorneys for respondent 580 Brighton Road Associates, relies upon brief filed on behalf of respondent Grillco Two.

*Dario & Yacker,* attorneys for respondent Township of Saddle Brook, relies upon brief filed on behalf of respondent Grillco Two.

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This is an appeal from a final judgment of the Law Division affirming a board of adjustment's grant of a use variance for a fast food restaurant in a municipality that prohibits fast food restaurants in every zoning district.

Saddle Brook is a medium-size suburban municipality in western Bergen County. The municipality, which is primarily residential, has a commercial district that contains a variety of uses, including at least three fast food restaurants—a Burger King, McDonald's and Kentucky Fried Chicken.

Sometime after these restaurants were established, the governing body amended the zoning ordinance to prohibit fast food restaurants in any part of the municipality. There is no legislative history indicating the purpose of this amendment or the circumstances of its adoption. The fast food restaurants established before this amendment continue to operate as preexisting nonconforming uses.

In June 2002, the Saddle Brook Planning Board granted a developer, defendant 580 Brighton Avenue Associates (Brighton), amended preliminary and final site plan approval and associated bulk variances authorizing development of a strip mall on a 3.2 acre tract of land located on the main street in Saddle Brook. This approval authorized construction of four buildings. At the time of the approval, Brighton had tentatively agreed to lease one of the buildings to defendant Grillco Two, LLC (Grillco) for use as a Wendy's fast food restaurant.

Subsequent to the approval, Grillco applied for a permit to construct a Wendy's restaurant in this building. This application was denied on the grounds that the proposed Wendy's would be a fast food restaurant, which is a prohibited use in the municipality.[1]

Grillco then applied to the Board of Adjustment for a use variance authorizing a Wendy's fast food restaurant with a drive-through facility in the fourth building in the mall. The application was opposed by plaintiff Saddle Brook Realty, LLC (Realty). The hearing on the application consumed a total of nineteen days over a year-and-a-half period.

At the time of the hearing, the other three buildings on the site were already constructed and occupied. The occupants of these buildings include a bank, liquor store, Verizon retail store, Krauser's convenience store that sells take-out food, and a Chinese restaurant that also sells take-out food. The existing buildings occupy approximately 23,500 square feet. The building containing the proposed fast food restaurant would occupy an additional 3,200 square feet.

The applicant, objector and Board all presented planning experts who gave opinion testimony concerning whether the proposed fast food restaurant satisfied the statutory prerequisites for the grant of a use variance. Grillco's expert, Joseph Burgis, testified that "the category of fast food versus non-fast food and other fast food restaurants has been blurred over time" and that this blurring, "in and of itself, represents a special reason to support this use variance request." He further explained that,

---

[1] The ordinance contains the following definition of a fast food restaurant:

> An establishment or business, which is essentially designed to dispense a limited variety of food and beverages, which are so prepared, packaged in paper, or in other types of disposable wrappers and containers in a form for quick or ready consumption. Such establishments may or may not have tables, and the food and beverages may be sold for consumption inside the building or on or off the premises.

Grillco does not dispute that the Wendy's it proposes to construct in the Brighton strip mall would be a fast food restaurant under this definition.

"from a land use perspective, there clearly is no distinction between fast food restaurants and other restaurants." Burgis testified that a further basis for finding the "special reasons" required for a use variance was "the symbiotic relationship between the overall [strip mall] center design and this fast food restaurant use." Burgis testified that yet another "special reason" was the "consistent and ... complementary nature of the proposed use with the surrounding development," which included numerous food sales establishments, restaurants and taverns.

The objector's expert, Dean Boorman, testified that the Brighton site had no "substantial advantages over other possible sites in the Township" for the location of a fast food restaurant. He indicated that the existing commercial uses in the mall were not the type of facilities in which customers would spend a significant period of time shopping and then go out to lunch. Boorman also expressed the opinion that the establishment of a fast food restaurant would not result in an upgrade in commercial development in the area. In addition, Boorman testified that because the governing body had made an express policy decision to prohibit the establishment of any new fast food restaurants in the municipality, the grant of Grillco's use variance would "substantially impact the intent and purpose of the ... zoning ordinance."

The Board's own planner, Michael Kauker, also concluded Grillco had not shown the "special reasons" required for the grant of a use variance. Kauker expressed the opinion that the site on which the proposed Wendy's fast food restaurant would be located was suitable for a variety of other commercial uses, including a traditional restaurant. Kauker stated that he didn't "find any characteristics, whether they be physical or they be arising out of the shape of the property or the location of the property, that would weigh in favor of using this site for [a fast food restaurant] as opposed to uses ... that are permitted under the zoning ordinance." In addition, Kauker noted that the revision of the Saddle Brook master plan then being prepared by his office did not

address whether additional fast food restaurants should be permitted in Saddle Brook.

The Board's resolution memorializing its approval of Grillco's application for a use variance consists primarily of a lengthy summary of testimony presented at the hearing. Following this summary, the Board made the following findings and conclusions relating to the requirement that an applicant for a use variance show "special reasons" for a deviation from the uses permitted under the zoning ordinance:

> The Board finds that the general welfare is served because the proposed use is peculiarly fitted to the particular location for which the variance is sought. The Board does not find that a refusal to allow the proposed development would impose an undue hardship upon the applicant. The Board finds that the proposed use fits within the scheme of the existing shopping center. The Board finds that in light of the testimony offered during the course of this application, there is no substantial distinction between the proposed Wendy's restaurant and a traditional restaurant which would not require a use variance. The Board finds upon the testimony and documents provided that a fast food restaurant with a drive through facility has a lower parking demand than a traditional restaurant and is therefore particularly suited to this site.

The Board also made the following findings relating to the requirement that the grant of a use variance "will not substantially impair the intent and purpose of the zone plan and zoning ordinance":

> The Board finds that the applicant has met the "enhanced quality of proof" set forth in *Medici v. BPR Co.*, 107 *N.J.* 1, 526 *A.*2d 109 (1987), requiring the applicant to [prove] that the variance sought is not inconsistent with the intent and purpose of the Master Plan and Zoning Ordinance. The Board finds that the Township's failure to revise its Master Plan within the 6 year period set forth in the M.L.U.L. reduces the enhanced burden. The Board finds that the presence of a number of other fast food restaurants in the immediate vicinity and the construction of a new shopping center, within which the Wendy's restaurant is proposed to be located, demonstrates that use omitted from the zoning ordinance is not incompatible with the intent and purpose of the governing body when the ordinance was passed. The Board finds that the proposed development is consistent with the Master Plan's goals and objectives such as redevelopment of the Market Street corridor, upgrading business and maintaining business uses. The Board finds that the proposed development is consistent with the zone plan in that it provides a desirable visual environment, provides sufficient space and is an efficient use of land.
>
> . . . .
>
> . . . The Board has reviewed the Township Master Plan and finds that although the proposal is for a fast food restaurant which is prohibited throughout the

Township, the proposed development is within an existing commercial district and will not substantially impair the Zone plan. The Board finds that the Master Plan makes Market Street the main business area within the Township and the proposed development does not conflict with this goal.

Realty brought this action in lieu of prerogative writs challenging the validity of the Board's decision granting Grillco's use variance application. Grillco filed a third-party complaint against Saddle Brook challenging the validity of the zoning ordinance that prohibits the establishment of fast food restaurants in the municipality.

Based on the record developed before the Board, the trial court affirmed the resolution granting Grillco a use variance for the proposed Wendy's fast food restaurant. On August 19, 2005, a final judgment was entered memorializing this decision.

On that same day, the court entered a consent stipulation of dismissal of Grillco's third-party complaint challenging the validity of the Saddle Brook ordinance prohibiting the establishment of fast food restaurants in the municipality. The dismissal was "made without prejudice, subject to a certain Agreement To Preserve Litigants' Rights made by the parties to the Third–Party Complaint dated August 15, 2005."

Realty appeals from the judgment dismissing its complaint challenging the use variance granted to Grillco. Realty argues that Grillco failed to establish the special reasons required to justify a use variance or that such a variance would not cause substantial detriment to the public good or substantially impair the intent and purpose of the zone plan and zoning ordinance. Realty also argues that the Board could not grant Grillco's application because Grillco repeatedly violated *N.J.S.A.* 40:55D–10(b), which requires any applicant for a land use approval to file any maps and documents for which approval is sought at least ten days before the hearing.

We conclude that the evidence presented by Grillco does not support the Board's findings of special reasons justifying a use variance for a fast food restaurant or that such a variance will not

substantially impair the intent and purpose of the zoning ordinance prohibiting this use. Accordingly, we reverse the judgment affirming the Board's resolution granting the use variance. In view of this disposition, there is no need to consider Realty's additional arguments that Grillco failed to establish that the requested variance could be granted without substantial detriment to the public good or that Grillco's alleged violations of *N.J.S.A.* 40:55D–10(b) require the variance to be set aside.

I

Initially, it is appropriate to discuss briefly the standard of review of a board of adjustment's decision granting a use variance. It is well-established that "[v]ariances to allow new nonconforming uses should be granted only sparingly and with great caution since they tend to impair sound zoning." *Burbridge v. Twp. of Mine Hill,* 117 *N.J.* 376, 385, 568 *A.*2d 527 (1990) (quoting *Kohl v. Mayor & Council of Fair Lawn,* 50 *N.J.* 268, 275, 234 *A.*2d 385 (1967)). Consequently, although deference must be given to any decision by a board of adjustment, a reviewing court gives less deference to a grant than to a denial of a use variance. *Funeral Home Mgmt., Inc. v. Basralian,* 319 *N.J.Super.* 200, 208, 725 *A.*2d 64 (App.Div.1999). In reviewing the grant of a use variance, a court must consider whether a board of adjustment "in the guise of a variance proceeding, [has] usurp[ed] the legislative power reserved to the governing body of the municipality to amend or revise the [zoning] plan . . . ." *Vidal v. Lisanti Foods, Inc.,* 292 *N.J.Super.* 555, 561, 679 *A.*2d 206 (App.Div.1996) (quoting *Feiler v. Fort Lee Bd. of Adjustment,* 240 *N.J.Super.* 250, 255, 573 *A.*2d 175 (App.Div.1990), *certif. denied,* 127 *N.J.* 325, 604 *A.*2d 600 (1991)) (internal quotations omitted). To sustain a use variance, a reviewing court must find both that the "board's decision comports with the statutory criteria and is founded on adequate evidence." *Burbridge, supra,* 117 *N.J.* at 385, 568 *A.*2d 527.

A board of adjustment is authorized to grant a use variance only "[i]n particular cases and for special reasons." *N.J.S.A.* 40:55D–

70(d). This is sometimes referred to as the positive statutory criterion for the grant of a use variance. *Smart SMR of New York, Inc. v. Borough of Fair Lawn Bd. of Adjustment,* 152 *N.J.* 309, 323, 704 *A.*2d 1271 (1998). In addition, an applicant for a variance must show that the variance "will not substantially impair the intent and purpose of the zone plan and zoning ordinance." *N.J.S.A.* 40:55D–70. This is sometimes referred to as one of the "negative" statutory criteria for the grant of a variance. *Smart SMR, supra,* 152 *N.J.* at 323, 704 *A.*2d 1271. We deal in section II of the opinion with the requirement that an applicant show special reasons justifying the grant of a use variance and in section III with the requirement that a use variance not substantially impair the intent and purpose of the zone plan and zoning ordinance.

II

■ Our case law recognizes three categories of circumstances in which the "special reasons" required for a use variance may be found: (1) where the proposed use inherently serves the public good, such as a school, hospital or public housing facility, *see Sica v. Bd. of Adjustment of Wall,* 127 *N.J.* 152, 159–60, 603 *A.*2d 30 (1992); (2) where the property owner would suffer "undue hardship" if compelled to use the property in conformity with the permitted uses in the zone, *see Medici v. BPR Co.,* 107 *N.J.* 1, 17 n. 9, 526 *A.*2d 109 (1987); and (3) where the use would serve the general welfare because "the proposed site is particularly suitable for the proposed use." *Smart SMR, supra,* 152 *N.J.* at 323, 704 *A.*2d 1271 (quoting *Medici, supra,* 107 *N.J.* at 4, 526 *A.*2d 109).

Grillco does not contend that its proposed fast food restaurant is an inherently beneficial use or that the use of the fourth building in the Brighton strip mall in conformity with the requirements of the zoning ordinance would create an undue hardship. Therefore, the Board had to find that the location where Grillco proposes to

operate a fast food restaurant is "particularly suitable" for this use.

In addressing this requirement, the Board stated: "The Board finds that the proposed use fits within the scheme of the existing shopping center." This finding does not support the conclusion that the proposed location of the Wendy's is "particularly suitable" for a fast food restaurant. *See Funeral Home Mgmt., supra,* 319 *N.J.Super.* at 209, 725 *A.*2d 64 (holding that "although property may be thought to be particularly suitable for a proposed use because the use fits well with the surrounding area . . ., that does not equate to special reasons"). The Board did not find that the mall is a more suitable location for a fast food restaurant than any other location in the Saddle Brook commercial district, which is a prerequisite for finding that there are special reasons justifying a use variance. *See Medici,* supra, 107 *N.J.* at 24, 526 *A.*2d 109 (holding that "[t]he fact that the site is near an interstate highway does not distinguish it from any other property in the vicinity of the highway" and thus does not constitute a special reason sufficient to sustain a use variance).

Nor does the Board's finding that "a fast food restaurant with a drive through facility has a lower parking demand than a traditional restaurant" support the conclusion that the mall is a particularly suitable location for the proposed fast food restaurant because this would be equally true of any other site where the restaurant might be located. *See Funeral Home Mgmt., supra,* 319 *N.J.Super.* at 212, 725 *A.*2d 64 (holding that alleviation of traffic or parking congestion was not a special reason justifying use variance where proposed use as funeral home would "add to the traffic in the area, albeit perhaps less so than a permitted use" as an office). Moreover, there undoubtedly are other potential commercial uses of the fourth building in the mall that would require less parking facilities than either a traditional or fast food restaurant.

At best, the evidence Grillco presented to the Board could support a finding that a fast food restaurant would be a conven-

ience to some customers of the existing retail stores. However, such a convenience does not constitute "an inherent benefit to the general welfare" that can support the finding of "special reasons" required for the grant of a use variance. *Medici, supra,* 107 *N.J.* at 18, 526 *A.*2d 109. To support a finding of special reasons, "any benefit to the general welfare [must] derive[ ] not from the use itself but from the development of a site in the community that is particularly appropriate for that very enterprise." *Ibid.* There is no evidence in the record that could support a finding that the Brighton mall is a particularly appropriate site for a fast food restaurant, particularly in view of the fact that there already are several fast food restaurants located nearby and two other stores in the mall that sell take-out food.

The Board's other finding that "there is no substantial distinction between the proposed Wendy's restaurant and a traditional restaurant" is not relevant to the question whether the Brighton mall is "particularly suitable" for a fast food restaurant. This finding simply reflects the Board's apparent disagreement with the governing body's policy decision to prohibit the establishment of any new fast food restaurants but permit other restaurants to operate in the commercial district. However, "[a] variance may not be based upon a conclusion by a board of adjustment that there is no factual justification for the regulation as an act of legislation." *Bern v. Borough of Fair Lawn,* 65 *N.J.Super.* 435, 451, 168 *A.*2d 52 (App.Div.1961). "A 'variance' presupposes the reasonableness of the zone regulation as a whole." *Moriarty v. Pozner,* 21 *N.J.* 199, 210, 121 *A.*2d 527 (1956). A claim that a zoning ordinance is unreasonable must be raised by an action in lieu of prerogative writs challenging the validity of the ordinance.[2]

---

[2] In fact, Grillco's third-party complaint asserted such a claim. In view of our reversal of the judgment affirming the grant of a use variance for the proposed Wendy's fast food restaurant, Grillco will now presumably pursue this claim in accordance with the "Agreement to Preserve Litigants' Rights" entered into contemporaneously with the consent stipulation of dismissal of the third-party complaint.

See *Pheasant Bridge Corp. v. Twp. of Warren,* 169 *N.J.* 282, 289–91, 777 *A.*2d 334 (2001). Such alleged unreasonableness is not a basis for a board of adjustment to grant a use variance. *See Vidal, supra,* 292 *N.J.Super.* at 564–68, 679 *A.*2d 206.

### III

To assure that the board of adjustment does not usurp the governing body's statutory authority to determine the municipality's zoning, the Court in *Medici* held that, in addition to establishing special reasons, an applicant for a use variance must show by "an enhanced quality of proof . . . that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance[,]" and the Board must make "clear and specific findings" that this showing has been made. 107 *N.J.* at 21, 526 *A.*2d 109. "The applicant's proofs and the board's findings . . . must reconcile the proposed use variance with the zoning ordinance's omission of the use from those permitted in the zoning district." *Ibid.* As an example of the kind of circumstance that would provide such enhanced quality of proof, the Court indicated that "proof that the character of a community has changed substantially since the adoption of the master plan and zoning ordinance may demonstrate that a variance for a use omitted from the ordinance is not incompatible with the intent and purpose of the governing body when the ordinance was passed." *Ibid.* The Court appended a footnote to this sentence that provides more specific examples of the circumstances in which a use variance may be reconciled with the zoning ordinance's omission of the use from those permitted in the zoning district:

> It may be that the proposed use was one, like a health club, that was uncommon when the ordinance was last revised, but has since gained currency. Competent proofs to this effect could dispel the concern that exclusion of the use was deliberate rather than inadvertent. Likewise, a variance application to permit a commercial use to be established on residentially-zoned property might also be supported by proofs demonstrating substantial changes in the character of the neighborhood surrounding the subject property since the adoption of the ordinance, in order to reconcile the apparent conflict between the ordinance and the proposed variance. Similarly, the needs and character of an entire community may be altered by extrinsic factors, such as the proximity of major highway construction or

commercial development in adjoining municipalities. Such circumstances may create a demand for uses, such as hotels, that were not anticipated when the ordinance was last revised....

[*Ibid.*, n. 11.]

The Court also observed that to the extent the requirement of the enhanced quality of proof established in *Medici* "narrows the discretion of boards of adjustment to grant use variances for uses intentionally and persistently excluded from the zoning ordinance by the governing body, we believe it accurately reflects the strong legislative policy favoring zoning by ordinance rather than by variance." *Id.* at 23, 526 A.2d 109.

▮▮▮ Grillco's proofs did not satisfy the burden of demonstrating by "an enhanced quality of proof ... that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." [3] *Id.* at 21, 526 A.2d 109. Initially, we note that Grillco's proposed fast food restaurant is not simply "a use omitted from" the permitted uses listed in the zoning ordinance. *Ibid.* Instead, it is a use that the Saddle Brook governing body has expressly prohibited in every zoning district. As one commentator has observed: "[W]here a particular use was specifically addressed by ... the zoning ordinance[,] ... arrogation of [the governing body's] planning responsibilities should be at the forefront of a board of adjustment's concerns" in considering an application for a use variance. William M. Cox, *N.J. Zoning & Land Use Administration,* § 8–2.3 at 228–29 (2006). Furthermore, Grillco did not present any evidence that "the character of [Saddle Brook] has changed substantially since the adoption of the

---

[3] In support of its argument regarding this requirement, Grillco relies upon *Sprint Spectrum, L.P. v. Zoning Bd. of Adjustment of Leonia,* 360 *N.J.Super.* 373, 823 A.2d 87 (App.Div.2003). However, *Sprint Spectrum* involved a use variance for a telecommunications facility. In such cases, a board weighs the "positive" and "negative" criteria that control use variances, rather than applying the *Medici* "enhanced quality of proof" standard that governs consideration of use variances for other commercial uses. *See New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adjustment,* 160 *N.J.* 1, 15, 733 A.2d 442 (1999); *Smart SMR, supra,* 152 *N.J.* at 332–33, 704 A.2d 1271; *Sprint Spectrum, supra,* 360 *N.J.Super.* at 391–93, 823 A.2d 87. Therefore, *Sprint Spectrum* has no applicability to this case.

... zoning ordinance" prohibiting new fast food restaurants. *Medici, supra,* 107 *N.J.* at 21, 526 *A.*2d 109. Therefore, the Board's grant of a use variance for a fast food restaurant in the face of the governing body's express prohibition of this use constituted a usurpation of "the legislative power reserved to the governing body of the municipality." *Vidal, supra,* 292 *N.J.Super.* at 561, 679 *A.*2d 206.

### IV

For these reasons, we conclude that Grillco failed to show either the special reasons required to justify the grant of a use variance for a fast food restaurant or that a variance for this use would not substantially impair the intent and purpose of the Saddle Brook zoning ordinance that prohibits this use in every district in the municipality. Accordingly, the final judgment of the Law Division affirming the Board's grant of a use variance for a fast food restaurant is reversed.