**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0432-22

211 ROUTE 17 SOUTH, LLC,

    Plaintiff-Respondent,

v.

BOROUGH OF HASBROUCK
HEIGHTS PLANNING BOARD/
LAND USE BOARD,

    Defendants-Respondents,

and

CR ROUTE 17 NJ, LLC,

    Defendants-Appellant.

_____

Submitted January 17, 2024 – Decided May 1, 2024

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0898-22.

Scarinci & Hollenbeck, LLC, attorneys for appellant (William C. Sullivan, Jr., on the briefs).

Beattie Padovano, LLC, attorneys for respondent 211 Route 17 South, LLC (John J. Lamb, of counsel; Daniel L. Steinhagen, of counsel and on the brief; Alexander J. Morgenstern, on the brief).

PER CURIAM

Defendant CR Route 17 NJ, LLC, (CR Route 17) appeals from a September 9, 2022 Law Division order vacating defendant Borough of Hasbrouck Heights Planning Board/Land Use Board's (Board) resolution granting CR Route 17 major site plan approval and several variances, including a use variance, for a drive-through. In reaching its decision, we conclude the court applied an incorrect standard and relied on evidence not supported by the record. Accordingly, we remand this matter to allow the court in the first instance to consider the parties' arguments in light of evidence contained in the record and the applicable legal principles described in Price v. Himeji, 214 N.J. 263 (2013), and to address the remaining objections raised by plaintiff.

## I.

In October 2021, CR Route 17 filed an application with the Board pursuant to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, seeking approval to demolish a vacant restaurant on Route 17 South and replace it with smaller Shake Shack with an outdoor patio and drive-through. The proposed construction required a use variance because drive-throughs are not

permitted in the Borough of Hasbrouck Heights' (Borough) B-2 Highway Commercial Zone. The record does not indicate when the Borough prohibited drive-throughs in the B-2 zone, or the reasoning behind that prohibition.

Additionally, defendant applied for a parking variance as its proposal included twenty-eight parking spaces rather than the required thirty-two, and sought design waivers related to the size of the parking spaces and curb radii. Further, because defendant sought to set its sign ten feet back from Route 17 South, it requested a variance from the Borough's requirement that freestanding signs be set back at least twenty-five feet.

With respect to the surrounding area, plaintiff 211 Route 17 South, LLC, owns the adjacent lot to the north, which is improved with a Starbucks without a drive-through. A Kentucky Fried Chicken with a drive-through occupies the lot to the south. To the east of the property is Route 17 South, and to the west is single-family residential housing. The record indicates other nearby drive-through restaurants in the immediate area include a Taco Bell, White Castle, Sonic, McDonald's, and Dunkin' Donuts. As noted, the record does not reveal, however, whether such drive-throughs were constructed before or after the prohibition on drive-throughs in the B-2 zone.

A-0432-22

The proposed Shake Shack would include a two-lane drive-through capable of accommodating up to twenty-six passenger vehicles, as well as a patio seating area on the Route 17 side of the structure. The Shake Shack would not, however, include indoor seating.

Defendant appeared before the Board and presented testimony in support of its application from, among others, Matthew Kunsman, P.E., and Matthew Seckler, P.E., P.P. Kunsman testified as to the need for design waivers for the size of the parking spaces and opined the proposed spaces were "an appropriate size for this type of use." With respect to the curb radii waiver, Kunsman opined the proposed dimensions were "adequate and safe for the vehicles to enter and exit [the] property." He also stated the proposed number of parking spaces was consistent with the standards set by the Institute of Transportation Engineers Parking Generation Manual for the use proposed on the property. He also testified there would be no light spillage onto residential properties, and improved landscaping would create a residential buffer.

Seckler testified as both a professional traffic engineer and professional planner. With respect to his opinion on the impact the application would have on traffic, Seckler testified the new construction would increase traffic about one percent, which he explained was "really not noticeable in terms of the traffic

4

flow through the area."  Seckler also stated Shake Shack operations personnel estimate fifty to seventy percent of customers would use the drive-through, depending on time of day and weather.

Additionally, Seckler distinguished the proposed drive-through from those nearby.  He specifically testified defendant's drive-through would consist of two lanes, rather than one, with the order location nine vehicle spaces from the pick-up window, as opposed to five, and an increased distance between the end of the drive-through and the exit.   Seckler also explained, "the uniqueness of the site, the way it's . . . [a] stretched out, double wide property with double the amount of area is properly designed for this type of drive-[through] use."

He further described the site as rectangular and consisting of two lots, one of which is "a little more than . . . twice the minimum width," which is suitable for the proposed use.  Specifically, he explained the site's size and shape would allow vehicles to queue in the drive-through and "wrap . . . all the way around" the property, which would not be feasible with a square shape of the same area.

Seckler also noted to the general benefits of drive-throughs, such as accessibility and traffic safety. Specifically, he stated drive-throughs "allow for different members of the population to be served by a site development" like the proposal as they are "especially valuable" to individuals traveling with young

5

children, the handicapped, and the elderly. He also stated, "as a traffic engineer, I find it safer to move vehicles in a forward fashion in a drive-[through] queue than having vehicles back out of parking stalls."

Addressing enhancements to the property, Seckler testified the plan included increased landscaping, decreased impervious coverage, and created a residential buffer that did not previously exist. Ultimately, Seckler opined the proposal met the Medici[1] criteria because the site was suitable for the type of development sought and furthered the purposes of the MLUL by enhancing the visual environment and balancing open space and development. He further stated the proposal was consistent with the Borough's master plan because it improved a commercial area and facilitated the interplay between commercial and residential zones.

Following additional testimony from Adam Mann, defendant's representative, and Joseph Vajda, defendant's architect, as well as comments from the public and the Board's counsel, the Board unanimously approved defendant's application, with all requested variances and waivers. It subsequently issued a written resolution memorializing its approval and setting forth its findings, conclusions, and decision.

---

[1] Medici v. BPR Co., 107 N.J. 1 (1987).

The Board initially stated the Building Department denied defendant's application because the proposal "required major site plan approval as well as numerous variances including a use variance for construction of the drive-[through] portion of the premises." The Board noted its jurisdiction over the application pursuant to N.J.S.A. 40:55D-70 and stated it accepted and considered the Board's engineer's report, defendant's application, a preliminary and final site plan, an architectural rending, a stormwater statement, and a neighborhood concerns petition. Additionally, the Board stated it heard and considered the testimony of each of the witnesses, including Kunsman and Seckler, and stated, "[a]ll testimony by the [a]pplicant and all the [a]pplicant's witnesses and professionals are incorporated herein."

The Board acknowledged, "[t]he proposed use as a fast casual restaurant is [a] permitted use in the zone however, drive-[through] facilities are not permitted, and therefore, a [(d)](1) variance is necessary." The Board stated, "based upon the testimony of the [a]pplicant's [p]lanner . . . 'special reasons' do exist for the approval of the [(d)](1) variance for a drive [through] facility."

The Board explained "one or more of the goals of the Master Plan of the Borough of Hasbrouck Heights will be advanced by the proposed plan in that the use of a drive [through] at this particular location would enhance public

7

safety and advances the most efficient utilization of the subject property," which, the Board stated, "is another goal of the [m]aster [p]lan and the Municipal Land Use Law." Further, the Board found, "the proposed plan represents a significant improvement and upgrade of the subject property, would enhance the utilization of the property[,] and would benefit the Municipality."

The Board also determined, "based on the totality of the circumstances and the testimony of all witnesses," the proposed plan will not have any negative impact on the master plan, zoning plan, or residents. Additionally, the Board noted, "numerous other drive [through] facilities are located within the immediate area." The Board acknowledged the concerns of area residents expressed at the hearing and found such concerns were "substantially addressed by the [a]pplicant and will result in certain conditions" on the plan's approval.

Plaintiff thereafter filed a complaint in lieu of prerogative writs challenging the Board's decision. Specifically, it contended the Board's decision was arbitrary, capricious, and unreasonable, and argued defendant failed to establish there were "special reasons" to support the granting of the use variance and did not demonstrate the granting of such could be reconciled with the drive-through prohibition.

Plaintiff also contended defendant did not present competent evidence "to justify the other variances and site plan design exceptions." Additionally, plaintiff alleged defendant's public notice was defective as it failed to describe the matters to be considered by the Board. Specifically, plaintiff stated defendant's notice was "inaccurate," as it failed to properly describe the drive-through and relief sought.

On September 9, 2022, after considering the parties' written submissions and oral arguments, the court entered an order reversing the Board's decision. In its accompanying written opinion issued the same day, the court concluded under the Borough's Zoning Code "the proposed use is not a restaurant" because "no food would be served within the premises," and noted the proposed Shake Shack is "clearly some type of retail use, but not a restaurant." The court also found, however, "while the applicant erred in describing the proposed use as a restaurant . . . the misuse of the term is not fatal to the application where it appears the actual retail use is also permitted in the zone."

The court then considered whether defendant met the required criteria supporting the granting of a use variance for a drive-through. Relying on Saddle Brook Realty, LLC v. Twp. of Saddle Brook Bd. of Adjustment, 388 N.J. Super. 67 (App. Div. 2006), the court rejected defendant's assertion the drive-through

9

would benefit certain demographics as sufficient to establish "special reasons" because the "benefit to the general welfare must derive not from the use itself but from the development of a site in the community that is particularly appropriate for that very enterprise," and found, "[t]here is no basis in the transcript of the hearing to support such a finding." The court also stated the Board's finding the proposal would enhance public safety was "without basis in the record as no traffic condition was identified which would be ameliorated by the project generally, or the unpermitted drive through specifically."

Further, the court determined the Borough "intentionally prohibited drive throughs and required indoor seating for restaurants" and the "granting of the variance in the face of the governing body's disapproval of such developments constitutes zoning by variance and is a usurpation of the Borough Council's authority and [is] without explanation." The court also found the granting of the use variance was contrary to the intent and purpose of the master plan and there was "no attempt to reconcile the repeated prohibition in the ordinance of drive throughs with the Board's determination . . . ."

The court further explained, "[a]t most, there is evidence that the defects and concerns generated by other drive throughs, which apparently pre-date the prohibition, will be differently addressed in the applicant's iteration." The court

10

concluded the Board's decision "substantially impairs the intent and purpose of the zoning ordinance," and the "facts relied upon by the applicant present no justification for the conclusion that the particular site in this B-2 district m[u]st be the location for the variance sought in order to promote the general welfare." This appeal followed.

## II.

Before us, defendant first argues the court abused its discretion and failed to give proper deference to the Board. On this point, defendant explains the court substituted its own judgment for that of the Board's and made independent findings of fact on an issue first raised by plaintiff on appeal to the Law Division and unsupported by the record. Specifically, defendant asserts the court independently interpreted the Borough's zoning ordinance and concluded the proposed Shake Shack was not a "restaurant" as defined by the ordinance, but "failed to recognize that the determination of the type of use proposed and whether it is permitted is beyond the jurisdiction of the [Board] and is confined to the authority of the municipal zoning officer."

Defendant next asserts the record supported the Board's determination to grant the use variance, and the court misapplied the law in reversing the Board's decision. With respect to the "special reasons," or positive criteria, defendant

relies on <u>Price</u>, 214 N.J. at 292-93, and argues it need not establish the subject location is the only property available for the proposed use. Rather, defendant contends it must only show the general welfare is served because the use is particularly fitted to the location.

Defendant maintains the property's location on Route 17 South, as well as its unique size and shape, sufficiently established a "special reason" for the Board to grant a use variance as the property is particular suitability for a drive-through thus promoting the general welfare. Further, defendant argues the proposal also serves the general welfare both through its inherent benefits, such as accessibility and safety, and by revitalizing an eyesore which satisfies a purpose of the MLUL and master plan.

With respect to the negative criteria, defendant asserts the court further overstepped its review by speculating "about the reasons why elected officials" adopted the prohibition on drive-throughs and why officials did not amend the prohibition despite the Board's granting of multiple use variances for drive-through restaurants on Route 17. Defendant maintains there is no evidence in the record concerning the number of drive-throughs approved as permitted uses prior to the prohibition or how many were approved by a use variance after the prohibition.

12

Defendant also states the record is devoid of evidence addressing the reasoning of the initial prohibition, or why it was kept in place. As such, defendant argues the court improperly concluded other drive-throughs "apparently pre-date the prohibition," and "the Borough's governing body intentionally prohibited drive-throughs and required indoor seating for restaurants," such that "the granting of the variance in the face of the governing body's disapproval of such developments constitutes zoning by variance and is a usurpation of the Borough Council's authority and [is] without explanation."

Defendant maintains testimony before the Board established the granting of a use variance could be reconciled with the prohibition on drive-throughs as the variance "would not substantially impair the intent or purpose of the municipal zoning plan or [o]rdinance." Specifically, defendant contends the testimony of its engineer and planner "directed the Board to the Borough [m]aster [p]lan objectives of enhancing commercial areas" and demonstrated the proposed Shake Shack would "revitalize an eyesore." Additionally, defendant argues testimony established the granting of the variance supported the master plan's goal of improving environmental conditions "by reducing paved area on the [s]ubject [p]roperty by almost one-third." Defendant also notes the proposed

Shake Shack strikes the balance of creating "a vibrant commercial zone on Route 17," while minimizing the impact on adjacent residents.

After considering the parties' argument against the record, we vacate the court's September 9, 2023 order and remand for further proceedings because we are satisfied the court failed to consider all relevant legal principles when determining defendant failed establish "special reasons" for the use variance and relied on evidence not in the record in concluding the use variance could not be reconciled with the zoning plan and ordinance. We also remand for the court to address the remaining arguments raised in plaintiff's complaint in lieu of prerogative writs with respect to the Board's granting of other variances and defendant's public notice.

## III.

We begin by setting forth the principles that guide our analysis. In reviewing a planning board's decision, we use the same standard used by the trial court. Cohen v. Bd. of Adjustment, 396 N.J. Super. 608, 614-15 (App. Div. 2007). Like the trial court, our review of a planning board's decision is limited. Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998). Decisions of zoning boards constitute quasi-judicial actions of municipal administrative agencies, Willoughby v. Planning Bd. of Deptford, 306

N.J. Super. 266, 273 (App. Div. 1997), and they are presumed to be valid. Cell S. of N.J. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002). Zoning boards possess "peculiar knowledge of local conditions," which entitle such boards to wide latitude in the exercise of discretion. N.Y. SMSA, LP v. Bd. of Adjustment, 370 N.J. Super. 319, 331 (App. Div. 2004) (quoting Pierce Estates Corp. v. Bridgewater Twp. Zoning Bd. of Adjustment, 303 N.J. Super. 507, 514 (App. Div. 1997)).

"[A]n overriding principle governing judicial review of variance decisions by boards of adjustment is that, assuming an adequate basis in the record for a board's conclusions, deference to the judgment of local zoning boards ordinarily is appropriate." Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58 (1999). We will reverse a planning board's decision only if its action was so arbitrary, capricious, or unreasonable, as to amount to an abuse of discretion. Zilinsky v. Zoning Bd. of Adjustment, 105 N.J. 363, 367 (1987). The burden is on the challenging party to show the board's decision was arbitrary, capricious, or unreasonable. Cell S. of N.J., 172 N.J. at 81; Smart SMR, 152 N.J. at 327. Further, "the Board 'has the choice of accepting or rejecting the testimony of witnesses. Where reasonably made, such choice is conclusive on appeal.'"

A-0432-22

Kramer v. Bd. of Adjustment, 45 N.J. 268, 288 (1965) (quoting Reinauer Realty Corp. v. Nucera, 59 N.J. Super. 189, 201 (App. Div. 1960)).

"A use variance, as the term implies, permits a use of land that is otherwise prohibited by the zoning ordinance." Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 101 (2011). Under N.J.S.A. 40:55D-70(d), a municipal land use board has the power "[i]n particular cases for special reasons, grant a variance to allow departure from . . . this act to permit . . . a use or principal structure in a district restricted against such use or principal structure." Less deference is given to a grant of a use variance. Saddle Brook, 388 N.J. Super. at 75. "[V]ariances to allow new nonconforming uses should be granted only sparingly and with great caution since they tend to impair sound zoning." Ibid. (quoting Burbridge v. Mine Hill, 117 N.J. 376, 385 (1990)). To uphold a use variance, a reviewing court must find the board's decision both meets the statutory criteria and is supported by adequate evidence. Ibid.

An applicant seeking a use variance must establish proof of both the "positive and negative criteria." Sica v. Bd. of Adjustment, 127 N.J. 152, 156 (1992). An applicant establishes positive criteria through "special reasons," ibid., which are those that promote the general purposes of zoning, enumerated in N.J.S.A. 40:55D-2. Burbridge, 117 N.J. at 386 (citing Kohl v. Mayor of Fair

16

Lawn, 50 N.J. 268, 276 (1967)). Such special reasons include, among others, promotion of "public health, safety, morals, and general welfare;" "[t]o provide adequate light, air and open space;" and "[t]o promote a desirable visual environment through creative development techniques and good civic design and arrangement." N.J.S.A. 40:55D-2(a), (c), and (i).

"Special reasons" generally fall into one of three categories:

> (1) [W]here the proposed use inherently serves the public good, such as a school, hospital or public housing facility; (2) where the property owner would suffer "undue hardship" if compelled to use the property in conformity with the permitted uses in the zone; and (3) where the use would serve the general welfare because "the proposed site is particularly suitable for the proposed use."

> [Saddle Brook, 388 N.J. Super. at 76 (citations omitted).]

The asserted positive criteria must be site-specific, in that the applicant must show that the proposed use is "peculiarly fitted to the particular location for which the variance is sought." Kohl v. Mayor of Fair Lawn, 50 N.J. 268, 279 (1967) (citations omitted).

In Saddle Brook, an applicant sought a use variance to build a fast-food restaurant in a mall in a municipality that prohibited such restaurants. 388 N.J. Super. at 70. We determined the Board's finding the "proposed use fits within the scheme of the existing shopping center" did not support the conclusion the

proposed location was "'particularly suitable' for a fast[-]food restaurant." Id. at 77. We also determined the Board failed to find the mall was a more suitable location than any other location for the fast-food restaurant. Ibid. Indeed, in that case, the Board's own planner testified the property did not have characteristics, "whether they be physical or they be arising out of the shape of the property or the location of the property, that would weigh in favor of using this site for [a fast food restaurant] as opposed to uses . . . that are permitted under the zoning ordinance." Id. at 72 (alternations in original).

We also concluded the Board's finding "a fast[-]food restaurant with a drive through facility has a lower parking demand than a traditional restaurant" does not support the determination "the mall is a particularly suitable location for the proposed fast[-]food restaurant because this would be equally true of any other site where the restaurant might be located." Id. at 77. We noted while a fast-food restaurant at the mall "could be a convenience to some customers," such did not constitute an inherent benefit to the general public sufficient to satisfy the special reasons required for a use variance. Id. at 77-78.

In Price, the Supreme Court considered whether an applicant seeking a use variance based on the site being particularly suitable for the proposed use "requires proof that the project must be built on that site because it is only one

18

available." 214 N.J. at 269. There, the Law Division "interpreted the particularly suitable standard to require such proof and, as the applicant had not proven that there was 'no other viable location' where its project could be built, overturned the Zoning Board's grant of a use variance." Ibid. We disagreed and concluded "particular suitability is a more flexible concept and that the trial court had misinterpreted its meaning by construing it too narrowly." Ibid.

In affirming our reversal of the Law Division's order, the Supreme Court stated, "the availability of alternative locations is relevant to the analysis," but "demonstrating that a property is particularly suitable for a use does not require proof that there is no other potential location for the use nor does it demand evidence that the project 'must' be built in a particular location." Id. at 293. Instead, "it is an inquiry into whether the property is particularly suited for the proposed purpose, in the sense that it is especially well-suited for the use, in spite of the fact that the use is not permitted in the zone." Ibid.

In addition to establishing the positive criteria, an applicant for a use variance must also satisfy the two-pronged "negative criteria," that is, establish the variance "can be granted without substantial detriment to the public good"

and "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." Price, 214 N.J. at 286 (quoting N.J.S.A. 40:55D-70).[2]

With respect to the second prong, in Medici, the Supreme Court increased the applicant's burden involved in making such a showing. Specifically, since Medici, applicants seeking a use variance must offer "an enhanced quality of proof . . . that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." Medici, 107 N.J. at 21. Such "enhanced proof" must "reconcile the proposed use variance with the zoning ordinance's omission of the use from those permitted in the zoning district." Ibid.; see also Saddle Brook, 388 N.J. Super. at 75.

We first note, notwithstanding the court's interpretation of the Borough Zoning Code and its conclusion the proposed Shake Shack would not constitute a restaurant, the court determined the use was a permitted retail use and proceeded to review the Board's decision to grant a use variance. As such, we conclude the court's determination the proposed Shake Shack was a retail use rather than a restaurant bore no significance on the court's ultimate ruling and, that contrary to defendant's argument, is not an independent basis for reversal.

---

[2] The court did not conclude, and plaintiff does not argue, defendant failed to establish the first prong of the negative criteria.

A-0432-22

It is evident, however, the court failed to address the site's unique characteristics in determining defendant failed to establish the site was particularly suitable for the proposed use. As noted, the court relied on Saddle Brook in concluding the proposed drive-through benefiting "the elderly, disabled and patrons with young children" did not establish "special reasons" because the "benefit to the general welfare must derive not from the use itself but from the development of a site in the community that is particularly appropriate for that very enterprise." In Saddle Brook, however, the proposed site did not have any specific characteristics supporting its use as a fast-food restaurant. Here, however, defendant submitted additional proofs and the court did not address the site's location, size, shape, and surrounding area, and whether such facts, considered together, were sufficient to establish the site was particularly suitable for the proposed use.

Further, the court found "[t]he facts relied upon by the applicant present no justification for the conclusion that the particular site in this B-2 district m[u]st be the location for the variance sought here in order to promote the general welfare." In Price, however, the Supreme Court rejected such a standard and held, "demonstrating that a property is particularly suitable for a use does not require proof that there is no other potential location for the use nor does it

21

demand evidence that the project 'must' be built in a particular location." 214 N.J. at 293. Rather, an applicant need only establish the property is "especially well-suited for the proposed purpose." Ibid.

Additionally, the court concluded granting the variance would constitute a "usurpation of the Borough Council's authority and [is] without explanation," and found there was "no attempt to reconcile the repeated prohibition in the ordinance of drive throughs with the Board's determination to grant same. At most, there is evidence that the defects and concerns generated by other drive throughs, which apparently pre-date the prohibition, will be differently addressed in defendant's iteration." The court's conclusion, however, was improperly animated, in part, by evidence not in the record. See Peoples Trust Co. v. Bd. of Adjustment, 60 N.J. Super. 569, 575-76 (App. Div. 1959) ("Judicial review of board of adjustment action is confined to the record made before the local board."). Indeed, contrary to the court's findings, the record does not indicate whether drive-throughs near the property were constructed as permitted uses before the prohibition, or if they were installed pursuant to a use variance after the prohibition.

In sum, we are satisfied the court failed to consider the legal principles espoused in Price and relied on evidence not in the record when reversing the

22

Board's decision. We conclude the appropriate course is to remand this matter for the court to reconsider the parties' arguments in the first instance consistent with our opinion and issue appropriate factual findings and legal conclusions. The court's findings should be limited to those supported by evidence contained in the administrative record.

We also conclude the court should consider plaintiff's remaining contentions set forth in its complaint in lieu of prerogative writs not addressed in the court's September 9, 2022 order, to ensure any further appellate review proceeds in an efficient manner. Specifically, the court should address plaintiff's claims with respect to the Board's approval of parking and sign variances, design waivers, and the sufficiency of defendant's public notice. Nothing in our opinion should be considered as an expression of our views on the outcome of the remand proceedings.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0432-22