**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0382-24

DAVE FRANEK,

    Plaintiff-Appellant,

v.

WANTAGE TOWNSHIP LAND
USE BOARD, CHARLES W.
MEISSNER, and TRI-STATE
BULK GARDEN SUPPLY, LLC,

    Defendants-Respondents.

_____

Argued December 17, 2025 – Decided January 27, 2026

Before Judges Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0461-23.

Kevin D. Kelly argued the cause for appellant (Kelly & Ward, LLC, attorneys; Kevin D. Kelly, on the brief).

David Burton Brady argued the cause for respondent Wantage Township Land Use Board (Brady & Correale, LLP, attorneys; David Burton Brady, on the brief).

Kelly M. Stoll argued the cause for respondent Charles W. Meissner (Askin & Hooker, LLC, attorneys; Todd M. Hooker and Kelly M. Stoll, on the brief).

Erica Edwards, Esq. Law Offices LLC, attorneys for respondent Tri-State Bulk Garden Supply, LLC, join in the briefs of respondents Wantage Township Land Use Board and Charles Meissner.

PER CURIAM

Plaintiff challenges the trial court's denial of its action in lieu of prerogative writs, which in turn challenged the Wantage Township Land Use Board's (the "Board") decision to grant defendant Charles W. Meissner's application for a use variance pursuant to N.J.S.A. 40:55D-70(d). The Board found Meissner satisfied both the requisite positive and negative criteria required for granting a (d) use variance and issued a detailed resolution laying out its findings of fact and conclusions of law. After careful review, we affirm substantially for the reasons expressed by Judge Stuart A. Minkowitz in his detailed, twenty-two page, written opinion.

I.

The parties are well-versed in the tortuous history of this case, and we need not repeat it here. Instead, we incorporate the factual findings from the two prior opinions that were issued. See Franek v. Wantage Township Land Use Board, No. SSX-L-508-19 (Law Div. Dec. 16, 2020); Franek v. Wantage

2

A-0382-24

Township Land Use Board, No. SSX-L-391-21 (Law Div. April 20, 2022) and the factual findings of the trial court's opinion regarding this appeal.

In pertinent summary, the Board unanimously granted Meissner's application for a (d) use variance and memorialized its decision in a resolution on September 17, 2019. Plaintiff filed an amended complaint in lieu of prerogative writs challenging this resolution, based on alleged improper testimony from recused Board members. Following a trial, the court remanded to the Board for reconsideration by an impartial panel. Thereafter, Meissner reapplied for a use variance for the site and once again received unanimous approval, which the Board memorialized in a resolution on July 20, 2021. Plaintiff filed another complaint in lieu of prerogative writs, arguing the Board's decision was improper. The trial court remanded the matter a second time because four of the voting Board members had previously voted to approve the 2019 application.

After this second remand, Meissner filed a third application for a use variance with the Board, this time before Board members who had not participated in the 2019 resolution. The Board considered the application at public hearings on September 20, 2022, October 18, 2022, April 4, 2023, May 9, 2023, June 13, 2023, and September 12, 2023. It heard expert testimony in

support of Meissner's application from professional engineer Kenneth Dykstra, P.E.; wetlands delineation specialist David Krueger; and licensed professional planner John McDonough, P.P., among other witnesses. The Board also heard testimony in opposition to the application from plaintiff and licensed professional planner Eric Snyder, P.P., as an expert witness. The public was given the opportunity to examine each witness, and the Board provided the opportunity for public comment on the application in general.

The Board again unanimously approved Meissner's application, and memorialized its decision in a resolution on September 12, 2023, which included findings of fact and conclusions of law.

Plaintiff filed a third complaint challenging the Board's decision to grant defendant's use variance application. After holding another bench trial, the trial court affirmed the Board's decision. This appeal followed.

II.

"The role of a court in reviewing the decision of a local board's land use decision is very narrowly circumscribed." Scully-Bozarth Post #1817 of the VFW v. Planning Bd. 362 N.J. Super. 296, 314 (App. Div. 2003). Accordingly, local boards are "allowed wide latitude in the exercise of delegated discretion." Medici v. BPR Co., 107 N.J. 1, 23 (1987) (quoting Kramer v. Bd. of Adjustment,

4

45 N.J. 268, 296 (1965)).  Their decisions are presumed valid.  Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 233 N.J. 546, 558 (2018); see also Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 58-59 (1999) ("[C]ourts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law."); Scully-Bozarth, 362 N.J. Super. at 314 ("Fundamentally, a reviewing court may not substitute its judgment for that of local officials. . . . It is not the role of the reviewing court to determine whether the decision of a local board was wise or unwise.").

Such a presumption of validity may be overcome if the board's decision was arbitrary, capricious, or unreasonable.  Price v. Himeji, LLC, 214 N.J. 263, 284 (2013).  "A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of a grant or denial of a variance are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official."  Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013) (citation omitted).

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial court.'"  Jacoby v. Zoning Bd. of Adjustment, 442 N.J. Super. 450, 462 (App.

5

Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "[A] court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Berardo v. City of Jersey City, 476 N.J. Super. 341, 353 (App. Div. 2023) (alteration in original) (quoting Price, 214 N.J. at 284). However, we review questions of law, including the interpretation of an ordinance, de novo. Dunbar Homes, 233 N.J. at 559.

On appeal, plaintiff reiterates the arguments it made before the trial court: (1) the application lacked sufficient evidence proving positive criteria; (2) the application lacked sufficient evidence proving negative criteria; (3) the variance permit is not consistent with the intent and purpose of the master zoning plan and ordinance; (4) the variance application did not prove the site is particularly suitable for variance relief; and (5) the McDonough report was an inadmissible net opinion in violation of N.J.R.E. 703.

Pursuant to N.J.S.A. 40:55D-70(d), a provision of the Municipal Land Use Law (MLUL),[1] "[a] board of adjustment has authority to grant a variance and permit the nonconforming use of zoned property." Burbridge v. Governing Body of Mine Hill, 117 N.J. 376, 384 (1990).

---

[1] See N.J.S.A. 40:55D-1 to -163.

A-0382-24

An applicant seeking a use variance must establish proof of both "positive and negative criteria." Price, 214 N.J. at 285 (quoting Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323 (1998)). "The requirement that a use variance be based on proof of the positive criteria arises from the language of the MLUL, which limits the grant of a use variance to those cases in which there is a showing of 'special reasons.'" Ibid. (quoting N.J.S.A. 40:55D-70(d)). "The MLUL does not define special reasons, but 'subsequent judicial interpretations have infus[ed] substantive meaning into the "special reasons" standard.'" Ibid. (alteration in original) (quoting Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment, 138 N.J. 285, 295 (1994)) (internal quotation marks omitted). Our Supreme Court has "observed that 'special reasons exist whenever a variance proposes to secure any of the statutory zoning goals.'" Ibid. (quoting Burbridge, 117 N.J. at 386). Thus, "the promotion of the general welfare [is] the zoning purpose that most clearly amplifies the meaning of special reasons." Medici, 107 N.J. at 18. "Special reasons" generally fall into one of three categories:

> (1) [W]here the proposed use inherently serves the public good, such as a school, hospital or public housing facility; (2) where the property owner would suffer "undue hardship" if compelled to use the property in conformity with the permitted uses in the zone; and (3) where the use would serve the general

7

welfare because "the proposed site is particularly suitable for the proposed use."

[Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 76 (App. Div. 2006) (citations omitted) (quoting Smart SMR, 152 N.J. at 323).]

Our Supreme Court held in Medici that in addition to establishing special reasons, "it [is] appropriate to require an enhanced quality of proof, as well as clear and specific findings by the board of adjustment, that the grant of a use variance is not inconsistent with the intent and purpose of the master plan and zoning ordinance," also known as negative criteria. 107 N.J. at 4. A showing "to satisfy the first of the negative criteria focuses on the effect that granting the variance would have on the surrounding properties." Price, 214 N.J. at 286. Specifically, an applicant must show that a variance "can be granted without substantial detriment to the public good." Ibid. (quoting N.J.S.A. 40:55D-70).

Regarding the second factor of the negative criteria, the Court pronounced that an applicant's proofs and a board's findings "must satisfactorily reconcile the grant of a use variance with the ordinance's continued omission of the proposed use from those permitted in the zone, and thereby provide a more substantive basis . . . that the variance 'will not substantially impair the intent

8

and purpose of the zone plan and zoning ordinance.'" Medici, 107 N.J. at 4 (quoting N.J.S.A. 40:55D-70(d)).

The Board's unanimous decision was not arbitrary, capricious, or unreasonable, as it was based on careful consideration of testimony from several witnesses, documents, plans, expert reports, photographs, and public inquiry and opinion over six publicly held meetings. Upon analyzing this wide array of evidence, the Board made detailed findings and conclusions wherein it determined Meissner's application satisfied both the positive and negative criteria.

Specifically, as to positive criteria denoting "special reasons" to permit defendant Meissner's use variance application, the Board's findings show "the use would serve the general welfare because 'the proposed site is particularly suitable for the proposed use.'" Nuckel v. Borough of Little Ferry Planning Bd., 208 N.J. 95, 102 (2011) (quoting Saddle Brook Realty, 388 N.J. Super. at 76). The Board's resolution indicates it was "persuaded by the testimony of Mr. McDonough," which included the opinion that "the property is suitable for the soil processing use" and vehicles necessary for the soil processing operation "do not have to utilize residential streets, which lessens the impact to residential uses."

A-0382-24

In addition to finding McDonough's testimony particularly persuasive, the Board made its own independent finding that "[w]hile topsoil processing is not among those [enumerated permitted] uses [in the Zone], a soil removal operation is permitted," and "[t]opsoil processing shares some characteristics of a soil removal operation but has less impact as it does not change the topography of the Property." The Board also noted the zoning ordinance permits "any other use that is determined by the Board of Adjustment to be of the same general character as the . . . permitted uses" and found the proposed use in Meissner's application "to be appropriate . . . since it has some similar characteristics to soil removal," a permitted use.

The Board also made several findings as to why the land is "particularly suited for the proposed use":

> [The road abutting the property] is a [c]ounty collector road. The sightlines from the driveway in either direction on [the road] exceed 1,000 feet. The Property is surrounded by other commercial uses. A source of the sand for topsoil processing is located a quarter-mile away. The Property is buffered by a substantial belt of trees to the north and west and the operation is set back from [the road] over 350 feet. . . . The topography, drainage, size, and location make it an ideal location for the proposed use.

Plaintiff contends Meissner's application fails because "at least [two] nearby sites in Wantage Township are particularly suited for this operation." To

10

support this analysis, plaintiff cites Price and argues "the availability of alternatives is relevant to the analysis of whether a property is particularly suitable to the use." This argument is misguided, as the Supreme Court in Price noted:

> Although the availability of alternative locations is relevant to the analysis, demonstrating that a property is particularly suitable for a use does not require proof that there is no other potential location for the use nor does it demand evidence that the project 'must' be built in a particular location. Rather, it is an inquiry into whether the property is particularly suited for the proposed use, in the sense that it is especially well-suited for the use, in spite of the fact that it is not permitted in the zone. Most often, whether a proposal meets that test will depend on the adequacy of the record compiled before the zoning board and the sufficiency of the board's explanation of the reasons on which its decision to grant or deny the application for a use variance is based.
>
> [Price, 214 N.J. at 292-93 (emphasis added).]

The Board's findings also support both negative criteria for granting Meissner's variance application. Regarding the first prong, "that the variance 'can be granted without substantial detriment to the public good,'" Price, 214 N.J. at 286 (quoting N.J.S.A. 40:55D-70), the Board found all perceived concerns with the variance would be adequately remedied by conditions set forth in its resolution granting the variance. Specifically, "the Board found that dust

11

A-0382-24

control will be addressed with a water truck and/or sprinklers," "[a]ll noise will conform to the standards for a commercial use," the "operation does not present any odor issues," and "the operator has a good history of operations at the prior site of operations in the Township."

Regarding the second prong, that the variance "will not substantially impair the intent and purpose of the zone plan and zoning ordinance," Price, 214 N.J. at 286 (quoting N.J.S.A. 40:55D-70), the Board made the requisite findings to satisfy the "enhanced quality of proof . . . that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance," Medici, 107 N.J. at 21. To this end, the Board found the dust anticipated to be created is similar to dust created by "farm fields and several businesses that have gravel driveways and parking areas" within the Zone. Because the Zone already permits topsoil removal operations and the ordinance expressly allows "any other use that is determined by the board of adjustment to be of the same general character as the [listed] permitted uses," the Board found topsoil processing "has some similar characteristics to soil removal." Therefore, its finding that the variance would not be inconsistent with the Zone's ordinance and master plan was not arbitrary, capricious, or unreasonable.

A-0382-24

The Board also reconciled any argument that the ordinance's omission of topsoil processing as a permitted use suggests the variance would be inconsistent with what is already allowed in the Zone by noting, "[N]ot including stand-alone soil processing operations in the list of permitted uses is not an indication it is inappropriate as it is similar in characteristics to a permitted use and the Ordinance allows the Board to permit uses of the same general character of those permitted listed uses."

We also conclude McDonough's expert opinion was not a net opinion. Zoning boards may choose to credit the testimony of all, some or no witnesses, including expert witnesses, but to be binding on appeal, those choices must have been reasonably made. Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment, 409 N.J. Super. 389, 434 (App. Div. 2009). "[T]he choice[s] must be explained, particularly where the board rejects the testimony of facially-reasonable witnesses." Id. at 434-35. And "[t]he board cannot rely upon unsubstantiated allegations, nor can it rely upon opinions that are unsupported by any studies or data." Id. at 435.

To avoid reliance on an impermissible expert opinion, the Supreme Court requires experts to "provide the 'why and wherefore that supports the opinion, rather than a mere conclusion.'" Borough of Saddle River v. 66 East Allendale,

LLC, 216 N.J. 115, 123 n.3 (2013) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011)) (internal quotation marks omitted).

The trial court reached the correct conclusion regarding the Board's reliance on McDonough's opinion, which was supported by factual evidence and personal observations. McDonough, in his capacity as a licensed professional planner, was accepted as an expert by the Board without objection. McDonough's conclusions were based on a review of Wantage Township's master plan going back to the 1980s and an assessment of the Zone's history of permitted commercial uses which included "soil mining facilities." McDonough also testified his observations were based on checking the MOD-IV-4 Land Use Classification System and other publicly available documents to analyze the Zone's current permitted uses and history of permitted uses. He visually inspected the site approximately five times, and chose not to interview the site's neighbors, which he testified was "[n]ot something I typically do" for a planning analysis. Additionally, he did not exceed his level of expertise and thus refrained determining the decibel output of the site's proposed operation. McDonough's report also includes several photographs taken during visits to the site. Therefore, because McDonough's testimony and report are based on factual data explaining the "why and wherefore" of his conclusions, the Board was

14

permitted the discretion to find this evidence more credible than that proffered by plaintiff.  See Clifton, 409 N.J. Super. at 434-35.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0382-24